## J. M. DOZIER, Trustee, etc. et al. v. F. F. FREEMAN et al.

1. CONTRACTS — AGENCY — TRUSTEESHIP.— When one person deals with another, knowing that the other is acting under delegated authority, it is his own folly if he does not inform himself of the extent of the delegated authority. In such case the principal is bound only to the extent of that authority.

2. SEPARATE ESTATE OF MARRIED WOMEN.— The law does not favor the divestiture of a wife's separate estate by her implied consent. The cases cited.

3. SAME — ESTOPPEL.— If a married woman accepts and enjoys a resulting trust, purchased with her separate estate, she is precluded from afterward asserting her right to the separate property so disposed of, though such disposition were *ultra vires* of the trustee who so disposed of it; but otherwise if she repudiates the transaction.

4. TRUSTEES.— If a suit be brought aginst trust property, it is the duty of the trustee to either defend it or give notice to the *cestui que trust;* and, if she be a married woman, to her husband also.

ERROR to the chancery court of Pontotoc county. POLLARD, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*J. A. Green,* for plaintiffs in error.

In order to establish a resulting trust, the payment of the money must precede the purchase. 13 S. & M. 53; 3 Rand. 263; 5 Mumf. 314; 10 Pet. 177; Story Eq. Pl. 214; 6 Cow. 726 ; 2 Johns. Ch. 409 ; 3 Paige, 390; 1 J. J. Marsh, 3; 1 Johns. Ch. 1.

A trust results where A. purchases land in my name, at my request, and with my money, but takes the deed in his own name; the law implies a trust from the transaction. But the payment of the money must be clearly established, or the actual loan of it at that time for that purpose. 2 Mad. 97; 3 Tuck. Com. 434. Chancellor Kent says that a trust is implied from the manifest intention of the parties. 4 Kent, 317. The advance of the money for the purpose, or the intention of the parties at the time of the transaction, are essential ingredients of an implied or resulting trust.

To establish a resulting trust, where one employs the money of another in the purchase of real estate, and where there is no valid agreement to purchase the property with the trust money, it is necessary to show that the money, at the time of the purchase, was the fund of the party claiming it, and that it was used in the purchase of the property. Gibson v. Foote, 40 Miss. 788.

When a purchase is made in the name of one person, and the purchase money paid by another, the law presumes that the party whose money was applied to the

payment of the property intended it for his own use, and that the nominal purchaser is a mere trustee. This presumption may be rebutted by proof showing that such was not the intention of the parties. Adams' Eq. 33; Capers v. McKay, 41 Miss. 479.

Where a written title to a slave is taken in his own name, by one who purchased with funds belonging to himself and another jointly, if there be no understanding or agreement between them at the time in reference to the purchase, and if it do not appear to what extent they were severally interested in the purchase money, no trust will result in favor of the party whose means were so used to the extent of his interest therein; but the title will vest in the purchaser, who will become a debtor to the other to the amount of his money used in the purchase. Coppage v. Barnett, adm'r, 34 Miss. 621, 649.

Then how can it be contended that Mrs. Lockhart, who was then in her cradle, intended or advanced this negro for the purpose of buying this land? Nor was it the intention of her trustee. The proof shows exactly the reverse. The object, in selling her it, seems, was to rid the family of a nuisance; for, in the language of one of the witnesses, she was "bad after men," and soon after she fell into Freeman's hands. She had "varicose veins," a bad servant, but, if the views of the chancellor are correct, a grand speculation for Freeman, but "a gift of ruin" for Leonora. But it is said that the negro was trust funds, and, being converted into land, that creditors may follow the fund. In the light of this testimony I can find no such doctrine, and I think counsel will not furnish the court with any. By ratifying the sale, Mrs. Lockhart could have subjected this land *pro tanto*, but she never ratified. She could maintain trover now for the slave. She has never parted with the title thereto, or she might, and doubtless did regard her grandfather her creditor for the value of the

slave. She had her option which remedy to pursue. 5 Ves. 678; 3 Tuck. Com., p. 459; 2 Sug. on Vend. 148; 2 Story Eq., § 1258; 3 How. (U. S.) 333.

It is certain she did not attempt to hold the land bound. Then, can a creditor force her to adopt legal remedies she declines? It was simply a right of action which she could forgive or waive, and her husband's subsequent purchase of the land at high figures shows she claimed no interest in the land on account of any of her property being used in its purchase; that her grandfather had re-imbursed her for the negro he had used of hers. But, concede that a trust did result to Mrs. Lockhart, or that the land became trust funds, subject to her debts, it will not be contended that Freeman was her creditor by this judgment. In the first place, Dozier, her trustee, could not make a warranty that would bind her; he might bind himself. 8 Mass. 162; Lewin on Trustees, 240; 31 Miss. 432.

He was sued, not as a trustee, but as J. M. Dozier, and judgment was rendered against him individually, and not against him as trustee. Executions were issued against him, but not to be levied of the trust property in his hands. There must have been a lien in Freeman's favor against the trust estate, to have authorized this decree. What law authorizes the sale of Mrs. Lockhart's property for the payment of an individual judgment against Dozier? It was not contended in the court below, nor will it be here, that Freeman is a judgment creditor of Mrs. Lockhart. There is no way for him to have been, in this transaction, though I am satisfied that his trustee deserves no credit for it, as his whole conduct, from the unlawful sale of one of her slaves, to the time that he is introduced upon the stand as a witness against her, evinces anything but a desire to protect her interest. He permits judgment by default to go against him. He permits a *pro confesso* to be taken

in this suit, and remembers things necessary to be proved for complainant—" well, for an old man."

*A. H. Handy,* on the same side.

1. It is perfectly clear that there is no claim, either legal or equitable, against Mrs. Lockhart in the matter.

The negro was conveyed to her trustee, " to hold for her sole and only use and benefit." Without any benefit accruing to her, and without her knowledge or consent—for no such consent is pretended to be shown, though the trustee labors hard to create the impression that there was a sort of constructive consent—he was guilty of the wrong of selling her property for the benefit of another person. He pretends that there was some sort of intention on the part of, Brame to convey the land, or part of it, to Mrs. Lockhart, and that such was Dozier's impression. But no evidence of such intention is shown, and Brame gave no obligation to do so, and never did convey it. His loose declaration, testified to by Freeman, of such an intention, creates no trust in her behalf. 5. Johns. Ch. 113.

If such was the inducement of this trustee to dispose of her property, it was his duty to have had her rights legally secured.

But he had no power whatever to sell or dispose of her property, and his sale of it was a gross violation of his trust. Much less had he the power to warrant the soundness of the negro, and to bind her thereby, as he undertook to do. Such a warranty, when it was thought the negro was diseased, as he admits, was both a fraud on the purchaser and a wrong to Mrs. Lockhart. But, not content with all this, he adds to it the crowning wrong of permitting judgment to go by default in the suit against him, without notice to his *cestui que trust,* nor effort to show that the negro was sound, nor to require proof to the allegation that she was "unsound and wholly valueless," as claimed in the declaration.

And this conduct is the more flagrant considering that he attempts, in his deposition here, to show that she was sound, stating that Dr. King said she was not diseased.

By a gross violation of his trust, he created the alleged liability; he tried to confirm it by failure to defend the suit, and to require proof of the cause of action, or to give notice of it, and he now appears a willing witness to fix this unrighteous demand on his *cestui qui trust*, founded on a false warranty which he himself made.

Freeman was bound to take notice of the want of authority, both to make the sale and to execute the covenant, as he was dealing with a trustee; and he is entitled to no indulgence. It is clear, that Mrs. Lockhart was not bound by the false warranty; and that the judgment founded on it, and here attempted to be enforced, creates no claim against her, either at law or in equity. Being a married woman, she was not bound by the covenant of her trustee. Stephenson v. Osborn, 41 Miss. 125; Wilson v. Beauchamp, 44 ib. 567.

And though it were conceded that the sale was ratified by her, there is no pretense that she authorized or adopted the covenant of warranty, which is the sole ground of this claim. But there is no such clear proof as the law requires of her ratification of the sale. Such transactions, affecting the separate property of a married woman, are regarded with jealousy in equity, and her assent will not be presumed without full proof. 39 Miss. 462; 43 ib. 685.

And, for aught that is shown in this record, Mrs. Lockhart has a perfect right to sue Dozier for the illegal sale of her property, and, upon the evidence here, she would be entitled to recover.

2. But in no proper view of the case does a resulting trust appear against Mrs. Lockhart. 1. A resulting trust arises from the manifest intention of the parties,

presumed from the circumstances of the transaction when there is no written evidence of it. 1 Cruise Dig. 464; Willis on Trustees (Law Lib.), 55. And it will never be raised in opposition to the obvious purpose and design of the transaction. 1 Lead. Cas. Eq. 204. Here it is manifest that no such use of Mrs. Lockhart's property was intended by her. On the contrary, her acts fully negative any resulting trust in her behalf. Hill on Trustees, 316, 317; Perry on Trusts, 475. The act of the trustee was an illegal and unauthorized disposition of her property by him, which leaves her right of property in the negro in the same condition as if she had never made the sale, with the right of recovery of possession from the person having possession, or with the right to hold the trustee liable for the wrongful sale and use of her property. 2. If a resulting trust arose to her from the transaction, it gave her an interest in the ownership of the land, and not a mere lien for what was invested in the purchase by means of her property. 1 Lead. Cas. Eq. 203. 3. The rule creating a resulting trust requires that the party claiming it shall have advanced the money or other valuable thing, in whole or in part, directly for the property conveyed. 1 Lead. Cas. Eq. 201; 40 Miss. 788. Here no money of Mrs. Lockhart was paid. Nor was her negro used in part for the purchase of the land. The negro was first sold by her trustee to Freeman, in part purchase of the land; but that transaction was rescinded, and Brame purchased the land from Wells, who returned the negro to Freeman, and took Freeman's note for the amount of her value, $1,600. The negro, then, was not used in part payment of the consideration of the deed from Wells to Brame—the conveyance from which this alleged resulting trust arises—but remained the property of Freeman. Freeman has no other claim, therefore, than for the damage he sustained from the unsoundness of the negro. And the absurd effort is made by the bill in

this case to transmute that claim for damages into a part payment of the purchase money of the land conveyed to Brame by Wells, and thereby raise a resulting trust in the land against Mrs. Lockhart! 4. A resulting trust is a privilege to the *cestui que trust*, to be claimed by her and at her option. It is against all principle that a party shall be driven into the position of possessing such a right. Even if the sale of the negro was, as pretended, by the consent or ratification of Mrs. Lockhart, and used in part purchase of the land, she had a perfect right to permit the grandfather to make such use without claiming any interest in the land for it.

3. It was error to rule out the testimony of Dozier, offered in behalf of the defendants, to show the sale of the land to Dr. Lockhart, and to negative the position taken in behalf of the complainant, that Mrs. Lockhart and her husband held it by descent from Brame.

4. Besides these errors, there is the objection that the decree of foreclosure was made without any reference to a commissioner to ascertain the amount due the complainant, which is essential. 43 Miss. 166, 167.

*Houston & Reynolds*, for defendants in error.

It is well settled, that if a person, having a fiduciary character, purchase property with the fiduciary funds in his hands, and take the title in his own name or in the name of a third person, a trust in the property will result to the *cestui que trust*, or other person entitled to the beneficial interest in the fund with which the property was paid for, and that a court of equity alone has jurisdiction to declare and enforce such trust. Perry on Trusts, 127 ; Story Eq. Jur., § 1210 ; Walker v. Brungard, 13 S. & M. 764. A court of equity has exclusive jurisdiction to enforce payment of the liability of a trust estate. Prewitt v. Lann, 36 Miss. 495; Swett v. Penrice, 24 ib. 416 ; Mitchell v. Otey, 23 ib. 239 ; 2 Story Eq., § 1397 ; 1 Am. Lead. Cas. 78.

Even if a trust estate could be sold under an execution at law, one of the purposes of the bill is to declare the land in controversy to be a trust estate, remove the clouds upon the title, and thereby aid the execution at law and prevent a sacrifice of the property, and, in the exercise of this jurisdiction, the court may not only remove the obstruction to a fair sale of the property, but, in addition, may decree the sale of the property and an appropriation of the proceeds to the payment of the judgment. Vasser v. Henderson, 40 Miss. 320; Hunt v. Knox, 34, ib. 655; Catchings v. Manlove, 39 ib. 670; Snodgrass v. Andrews, 30 ib. 472.

The jurisdiction conferred by statute upon courts of equity to remove clouds from title in the cases specified, was a special and limited jurisdiction, and that the court could only remove the clouds, and could not grant any additional relief. Ezelle v. Parker, 41 Miss. 520. The jurisdiction which is invoked in this cause is not statutory, nor is it special and limited, but belongs to a court of chancery in the exercise of its general jurisdiction, and draws to it all the incidental powers of the court. It assumes jurisdiction of the entire controversy, and has power to grant such relief as will settle it.

The bill is not multifarious; it does not demand several matters of different natures against several defendants, and all the defendants have an interest, though not the same, in the matter of controversy.

The demand is for one matter: the satisfaction of the judgment of Freeman against Dozier, trustee, etc., out of certain trust property in which all the appellees, except Dozier, the trustee, have an interest, and as co-partners hold the legal title.

The relief prayed for is not contradictory or inconsistent. The relief asked is, that the court decree that Leonora Lockhart have an interest in the lands to the extent of the value of her property, which was appropriated by her trustee to the purchase thereof; that all

conflicting titles be removed, and that the same be declared subject to the lien of the judgment, or that the title be vested in a commissioner, with power to sell and apply the proceeds to the payment of the judgment. Hunt v. Knox, 34 Miss. 655; Catchings v. Manlove, 39 ib. 670; Snodgrass v. Andrews, 30 ib. 472.

Defects or omissions, arising from obscurity or unskillfulness in drawing the bill, should be distinctly and specifically pointed out in the demurrer. Fearne v. Shirley, 31 Miss. 301. The demurrer is to the whole bill, and if a part of the bill be good, and we contend that it is, the demurrer will be overruled. Graves v. Hull, 27 Miss. 419.

2. The testimony of Dozier was properly excluded, for the following reasons: 1. If there was a sale of the land by Dozier, executor, etc., to George W. Lockhart, the best evidence of it was the deed itself or a certified copy; it was not competent to prove the sale by the verbal statement of the witness; 2. If George W. Lockhart was a *bona fide* purchaser of the land for a valuable consideration, and relied upon it as a defense, he should have set it up in his answer. He cannot prove by his testimony that which he does not aver in his answer; the answer does not state that Lockhart was a *bona fide* purchaser. In order to entitle a party to protection as a *bona fide* purchaser, he must set up such defense and deny notice fully and particularly, whether the defense be presented by plea or answer. Stanton v. Green, 34 Miss. 592; Lewis v. Beatty, 32 ib. 87.

3. The title bond offered in evidence was attested by a subscribing witness, and appellee objected to its admissibility as evidence unless the signature of the obligors was proven by the subscribing witness. The objection was properly sustained. 1 Greenl. Ev., § 569.

4. The trust deed under which Dozier held the property, provides: " To permit my granddaughter (Leonora)

to sell or exchange any of the property, whenever in the opinion of the trustee the same is required to serve some beneficial end, and with the proceeds to purchase other property, and to concur in such acts as may be necessary for that purpose."

The sale was made with the approbation of Leonora, and "the beneficial end served" thereby, was the sale of a slave whose lascivious proclivities were obnoxious to the family. Brame and Dozier, it is true, were the active parties in the negotiation, yet their conduct was approved and ratified by the *cestui que trust,* Leonora; "*qui facit per alium, facit per se.*" It is urged that payment must precede purchase in order to establish a resulting trust.

The principle does not apply. It is not attempted to establish a resulting trust, on the ground that the purchase money was paid by one person, and the title taken in the name of another. In such a case, payment must precede the purchase in order to raise a resulting trust in favor of the party who advances the purchase money. The trust property held by Dozier, as trustee for Leonora Lockhart, was invested in the lands in controversy, and that by the law, the *cestui que trust,* or a creditor of the trust estate, has the right to follow the trust funds into any property into which it has been converted (Walker v. Brungard, 13 S. & M. 764); and to have the holder of the legal title declared a trustee for the beneficiaries of the trust estate. Perry on Trust, § 127; Story Eq. Pl., § 1210.

But further, the sale of the slave Harriet was made at the time of the purchase. The sum of $1,000 was to be paid at the first stage in the purchase of the land, and this was paid by the sale of Harriet. If, at the time of the purchase, and a part and parcel of the transaction, one party should pay a part or all of the purchase money, and the title should be taken in the name of another, would not a trust result to the party who

advances the money, and to the extent of, and in proportion to, such advance ?

It is settled, that if parties contribute unequally to the payment of the consideration, a trust results to each of them in proportion to the amount paid by each. Perry on Trusts, § 132; Botsford v. Broor, 2 Johns. Ch. 405; Quackenbush v. Leonard, 9 Paige, 334; Pierce v. Pierce, 7 B. Mon. 433; Shoemaker v. Smith, 11 Humph. 81; Brother v. Porter, 6 B. Mon. 106; authorities cited in note 6, p. 104, § 132 of Perry on Trusts.

The party claiming the resulting trust must show, not that he made a general contribution toward the purchase, but that he paid some specific sum for some distinct interest in or aliquot part of the estate. Perry on Trust, § 132; Coppage v. Barnett, 34 Miss. 649.

The omission to state, in the style of the case, for whom Dozier was trustee, does not affect the character of the action. Pressly v. Anderson, 42 Miss. 274. But if the judgment was against Dozier individually, still, if the demand of Freeman was against the trust estate, it may be enforced against the estate without any judgment at law against the trustee. Wylie v. Gray, 9 Ga.

Simrall, J.:

The legal questions arise on this state of facts: The complainant, Freeman, had an equitable title to the southeast ¼ of sec. 1, town. 10, range 4 east, and came to an agreement with Dozier and Brame to sell and convey to Brame, for a price agreed upon, Freeman to take a slave by the name of Harriet, at the price of $1,000 for the cash payment. The slave was held by Dozier, as trustee for Leonora Lockhart, *nee* King, the granddaughter of Brame. Brame, discovering that the legal title was in Wells, paused in the consummation of the purchase, when another arrangement was made, by which Wells conveyed the land to Brame, taking from him his two notes for the deferred payments, Freeman

at the same time surrendering to Brame the notes for corresponding amount which he had given. It seems that Freeman was indebted to Wells some $1,000, which was credited by the substitution of Brame's notes, as above stated, and also by the sum of $1,600, the price of Harriet, purchased from Freeman by Wells, as part of the transaction.

Afterward, upon objection made to Freeman by Wells that Harriet was unsound, the sale was rescinded and cancelled as to her. Dozier, in the sale of the slave to Freeman, as the cash payment for the land conveyed to Brame, warranted her soundness. Freeman brought suit, in 1862, upon the covenant of warranty, and recovered against Dozier a judgment for $1,300, or thereabouts. Executions upon this judgment have been returned *nulla bona.*

Thereupon, Freeman brought this bill in chancery, claiming that a resulting trust exists upon the land in favor of Mrs. Lockhart, which ought to be subjected in the proportion of $1,000 to the whole consideration money to the satisfaction of his judgment against Dozier. Brame has departed this life intestate, leaving, as his heirs at law, his grand children, the issue of his daughter, Mrs. King, who is also dead.

The defense was placed upon several grounds. 1. That Dozier, the trustee, had no power to sell the slave Harriet; 2. He had no power to make a warranty which, in equity, ought to bind Mrs. Lockhart or her estate; 3. There has been no breach of the warranty.

The equity of the complainant, as claimed by him, is that the property of Mrs. Lockhart was applied to pay in part for the land conveyed under the circumstances disclosed in the record by Wells to Brame, and, therefore, a resulting trust inures to her *pro tanto;* which trust a court of equity will work out and apply to the satisfaction of Mrs. Lockhart's debts. The predicate law is sound. But does the complainant exhibit a debt

against Mrs. Lockhart which she ought, in good conscience, to pay? Is it binding upon her and her estate? It may be assumed as fact that the slave Harriet, at the value of $1,000, was accepted by Freeman from Dozier as part payment for the land, and that the benefit of that arrangement was carried out when the title passed from Wells to Brame. But had he authority to make that use of property which he held in trust? The paper containing a receipt of the price and warranty of title is signed by Dozier " as trustee for Leonora Lockhart." Freeman was advised that Dozier was dealing with the property by virtue of authority conferred upon him, and not because of personal ownership, and, having notice, was charged with the duty of acquainting himself with the extent of his power. Where one deals with another, acting under delegated authority, it is his own folly, if he does not inform himself of the scope of the authority. The principal is only bound so far as he has consented to be bound. Those having interests in the subject-matter of the trust or agency are no further concluded than as the trustee or agent has pursued his power.

There is some difficulty in arriving at the exact truth as to the fact, because there are three deeds of trust in the record, made by Brame to Dozier; in two of which a slave by the name of Harriet is mentioned; one executed in 1842, the other in 1860. In the abstract of counsel for appellees, it is stated that they rely upon the deed of 1860. It is not intimated anywhere in the record that there were two women of that name.

The deed of 1842 conveys several slaves to Dozier in trust for Mrs. King. The 4th trust is, " to have and hold the slaves ' Harriet,' Margaret, children of Caroline before mentioned, to and for the sole and only use and benefit of my grand daughter, Mary Leonard King, daughter of Mary F. F. King and Madison King, the said slaves and their increase."

It is manifest that this deed does not confer upon Dozier a power of sale. His office is nominal, except so far as would be necessary to interpose and protect the property or its income for the *cestui que trust.* Instead of selling, he is to " have and to hold," for the sole and exclusive use of the beneficiary.

If the slave mentioned in this deed is the same as the woman of the same name in the deed of 1860, it is equally clear that Brame, by the conveyance of 1842, had divested himself of all title and interest, and could not therefore declare another or different trust in 1860. It does not seem to be controverted that there is but one person of that name, and that both deeds refer to the same slave.

The important matter then is, that Mrs. Lockhart, the real beneficial owner, who was under coverture at the date of the sale and warranty, should herself have parted with her ownership, and that she should have assumed the burden of the covenant of warranty.

The only ground upon which it is maintained that she assented to the disposition of the property, is that she was aware that a rule was to be made, and acquiesced in it.

The law does not favor the divestiture of the wife's separate property by an implied consent or acquiescence. Where the husband claimed her slaves as his own, and had them valued as such, she being aware of · it, and making no objection, it was held that this conduct did not divest her right as against another creditor. Palmer v. Cross, 1 S. & M. 48. Where the husband (and the principle applies to her trustee) sold the wife's slaves, but afterward made a settlement of other property upon her, then she gets an equivalent compensation, and, if she elects to hold under the settlement, she could not recover back the property so converted. Wiley v. Gray, 36 Miss. 510. So in this case, if Mrs. Lockhart. were asserting and enjoying the benefit of the

resulting trust, she would be precluded from asserting a right to the property which had been used to purchase it, although such appropriation of it was *ultra vires* of the trustee. But she denies and repudiates any claim to the land arising out of a trust, and refers her right to the inheritance cast upon herself and co-heirs of her grandfather, and a purchase by her husband of the interest and title of her coparceners. Although the chancellor rejected the written evidence of such purchase by Mr. Lockhart, there is testimony in the record that the obligations of Lockhart were given to the co-heirs of his wife for their interest in the land, and that Lockhart and wife were in the occupancy of the whole tract, referring their right to that acquisition of title. The testimony quite conclusively negatives the proposition that Mrs. Lockhart or her husband claimed otherwise than through a descent cast upon her and purchase from her co-heirs.

If there was no right in the trustee to sell, he certainly could not impose upon Mrs. Lockhart a liability by the warranty.

There is no clear and satisfactory proof of the unsoundness of the slave at the date of the sale to Freeman. The judgment against Dozier does not conclude Mrs. Lockhart on that point. The foundation of the debt attempted to be charged upon her is the damages resulting from the breach of warranty. Dozier, in his testimony, does not affirm that within his knowledge the slave was unsound. Quite all of his information and statements are derived from others. Thus, he says, Dr. King, at the time it was proposed to sell her, was of opinion that she was sound. Again, when Wells returned her to Dozier, he reported that he had procured physicians to examine her, who thought that she was diseased. Nearly, or quite all, the testimony has the weakness of hearsay evidence. Neither Freeman nor the physicians were examined. There is the utter

absence of testimony from primary sources, tending to prove the character of the malady, the extent and duration, and to what extent it injured value. Freeman did not offer to rescind the sale by a return or offer to return; he would only be entitled to recover from Dozier to the degree that the services were impaired by disease.

But further, the circumstance in this connection is worthy of note, that Dozier made no defense to Freeman's suit, but suffered judgment to go by default. If, in his estimation, he was but a nominal party, the real warrantor being Mrs. Lockhart, then it was his duty, as a faithful trustee, disposed to protect his *cestui que trust*, to have given notice to Mrs. Lockhart and husband, so that they might have opportunity to have a full investigation.

On the complainant's theory that Mrs. Lockhart is responsible for the warranty of her trustee, we think the testimony is not clear and satisfactory as to the breach of warranty, and of the extent of damages resulting therefrom.

We think there is error in the decree; wherefore it is reversed, and judgment here dismissing the complainant's bill.