## J. J. HOUSTON ET AL. *v.* C. V. WITHERSPOON.

ESTOPPEL.  *Landlord and tenant.*  *Suit for rent.*

A landlord in Kentucky was led to believe by the tenant on her plantation in Mississippi that he was unable to pay rent due without selling his mules. She wrote him consenting to await another crop for the rent.  In truth, he had raised crops sufficient to pay the rent, a portion of which, in value exceeding the rent, he had delivered to merchants on a supply-account, they knowing of the landlord's lien.  Without her knowledge, he showed them her letter, and on the faith of it they gave him further credit.  The rent was not paid, and the landlord sued the merchants for the value of the crops received.  *Held*, that she was not estopped by her letter, she having done nothing to mislead defendants, and not knowing her rights when she wrote.

FROM the circuit court of Lafayette county.

HON. WILLIAM M. ROGERS, Judge.

The appellee, Mrs. C. V. Witherspoon, owned a plantation in Lafayette county, Miss.  She resided in Louisville, Ky.  In October, 1884, she made a written contract with one I. T. Mason whereby she leased to him said plantation for five years from January 1, 1885, in consideration of a yearly rental of $500, and the tenant was in addition to pay all taxes.  The lease contained a provision that a failure to comply with the stipulations of the contract would cause a forfeiture of the same.

In the year 1886, Mason made a crop of 42 bales of cotton, the value of his interest therein being more than $500.  He also made a crop of corn, the value of which was also more than sufficient to pay the rent.  During that year he purchased supplies and other merchandise from the appellants, Houston & Son, who were merchants and who knew of the tenancy, and that the crops raised by Mason were subject to a lien for the rent.  In December, 1886, the cotton raised by the tenant was delivered to said merchants, and the proceeds were applied to the credit of his account with them, the corn being left on the place.  On January 25, 1887, Houston & Son, supposing that they would probably have to pay the rent, took a trust-deed on the mules and farming utensils of Mason to secure the balance due them on account for supplies, etc.  After

that they notified him that they could not advance him further unless he could make arrangements that would be more satisfactory to them. Thereupon, on February 2, 1887, Mason wrote Mrs. Witherspoon, at Louisville, Ky., as follows :—

"Your postal to hand, and am sorry to say that I have not made arrangements as yet for money to pay your rent. The party who was to let me have money says now that it is impossible for him to get it, which is a disappointment to me as well as you. Should I fail to get the money, can you assist me by carrying me over until December? I know the contract between us is, should I fail to pay the rent the contract is then null and void. I have everything on the farm in good fix for making a crop, and with favorable season will come out safe. If you can carry me over for another year, you will confer a great favor; but should you insist I shall have to sell my mules and . . . . to pay you, and throw up my contract; but hope you will trust me for to make another crop. Hoping to hear from you soon, I am, respectfully, etc."

At this time there was on the place sufficient corn, none of which had been purchased by Houston & Son, to pay the rent. This corn was used up by Mason. Mrs. Witherspoon was not aware of the fact that they had purchased and shipped the cotton, nor that there was any corn on the place, and she believed all the statements in the letter of Mason to be true. On February 6, 1887, she responded thereto as follows :—

"Your letter has been received, and while it puts us to a great deal of inconvenience not to have the rent, we have gone over our affairs and think that by strict economy we may be able to get through the year if it is possible for you to send us $100 by the first of March. After meeting the March rent (we pay the first of every month), the second quarter's salary comes in time to meet the April dues. So rest easy about your affairs. Of course you will pay interest on the money due last January, and not paid until next, for I am very sure we will be compelled to go into bank before the year is out, and then will have of course to pay bank rates for the use of money. I would not under any circumstances have you sell your mules and farm utensils. I have heard a great

deal about the distress in Mississippi, and Mr. Witherspoon knows a great deal about the trouble of money matters among the farmers in his travels through the country preaching."

This letter Mason showed to the agent and manager of Houston & Son, and thereupon they, thinking from the letter that the matter was arranged, and relying upon that letter, extended to Mason a further credit of time and supplies for the year 1887. Mrs. Witherspoon knew nothing of her letter being shown to the agent of Houston & Son; nor did she know that they had bought the cotton, or that there was any crops remaining on the place. There was no communication whatever between her and Houston & Son.

In December, 1887, she ascertained the fact that they had purchased the cotton, and that there was sufficient corn on the place to pay the rent at the time Mason wrote her the letter above quoted. There was no communication between Mason and Mrs. Witherspoon except the foregoing. Houston & Son received all the property covered by the trust-deed given them by Mason, and the proceeds of the sale of the same did not pay the debt for additional advances made by them in 1887.

Mason failed to pay the rent to Mrs. Witherspoon, and in 1888 she brought this suit against Houston & Son, for the $500 rent with interest thereon, the value of the cotton received by defendants subject to her lien for the rent of 1886. On a plea of not guilty, the cause was tried before the court without a jury upon the foregoing facts, which were agreed to as being all the testimony.

Judgment for plaintiff; defendants appeal.

*Edward Mayes,* for appellant.

The judgment of the court below is erroneous for two reasons:—

1. Because the court held that the letter of Mason was a fraudulent one as to Mrs. Witherspoon.

2. Because it was held that appellants were affected by the fraud.

In considering the first question, it is necessary to analyze the letter. If its statements are substantially true then there was no

fraud. The whole correspondence is not produced. This letter refers to a previous communication. As all of the correspondence addressed to plaintiff was not produced, the presumption is that if the previous letter had been introduced it would not sustain the charge of a fraudulent representation in reference to the party Mason had expected to obtain money from. There is not a particle of testimony that the statement of Mason as to his endeavors to negotiate a loan for the purpose of paying the rent was untrue. The previous letter would have explained this. He is entitled to the presumption of innocence, and, with only a part of the correspondence produced, the court will not jump to the conclusion of fraud.

There is no showing in the record that Mrs. Witherspoon did not know that a crop had been raised. She must have known that fact. Application for a year's extension of payment of the entire rent must have called forth some inquiry as to this. It will be noted that the letter of Mrs. Witherspoon in reply makes no mention whatever of the crop. It would seem strange that her determination as to the extension of payment should be controlled, or even influenced, by a consideration as to whether there was a crop, when this is not even mentioned in this letter. It is plain that she knew the tenant had applied the crop about his needs and expenses on the place; or else that she elected to retain him as a tenant, trusting to straighten things in the future. If the latter is true, she cannot now reconsider that determination to the detriment of persons who have acted on the faith of it. The most troublesome of all matters connected with a plantation is to get tenants for it, and especially those who can provide their own basis of credit for supplies. Mrs. Witherspoon was not supplying this tenant, and she might well have preferred to take her chances on the future crops rather than exact the rent for 1886 with the possible consequences of breaking up her tenant.

The statement of the letter that the mules and utensils would have to be sold, if the rent was insisted upon, was really true. If the proceeds of the cotton had been demanded, then the trust-deed would have been foreclosed, and the mules and utensils *would have*

*been sold:* so the representation in the letter as to this was not untrue.

As to the second proposition, if we grant that Mason defrauded Mrs. Witherspoon, that fraud cannot be set up against Houston & Son because of the estoppel arising from her remissness. She did not exercise reasonable diligence. Having armed Mason with a waiver, which, whether intended for exhibition or not, she must have known could be so used, she took that risk. "An estoppel *in pais* is an indisputable admission arising from the fact that the party alleging it has been induced by the action of the party against whom it is alleged to change his position." Bigelow on Estoppel, Introduction, p. 54.

Estoppel may arise from negligence, as well as from active misconduct. Ib. 61.

Both waiver and acquiescence often operate to produce an estoppel. Ib. pages 61, 524, 525 ; *Ripley* v. *Insurance Co.,* 30 N. Y. 136.

In this case there was both the consideration for the waiver (the continuance of Mason as tenant), and also a change of position on the faith of the waiver (the extension of further credit by appellant).

There is no charge of improper dealings on the part of appellants ; no pretense that so far as they were concerned it was any other than a straightforward transaction.

*A. H. Whitfield,* for appellee.

When Mason wrote Mrs. Witherspoon he concealed from her the truth as to the crop, and the statements of his letter were untrue. If all the cotton raised had been applied to the supply bill, the corn alone which was then on the place would have paid the rent. He therefore deceived Mrs. Witherspoon, and she wrote him under a misapprehension as to the facts.. Houston & Son knew that the $500 rent was due, and that they were liable for it after receiving the cotton, and they knew that the corn was on the place. They knew also from Mrs. Witherspoon's letter that she was granting the extension under the belief that there was

nothing to pay the rent, and that the mules would have to be sold to raise money if she insisted on payment, yet they did not inform her to the contrary.    All this shows that they were in collusion with Mason in deceiving Mrs. Witherspoon, and absorbing the products of her place.    She knew nothing of her letter being exhibited to Houston & Son ; nor did she know that they had bought the crop, but believed the letter of Mason was true, and knew no better until December, 1887.    The reference in the letter to Mason to the receipt of a postal card shows that this postal card was only a request for the rent-money.

Counsel overlook the fact entirely that Mrs. Witherspoon only agreed to wait upon condition that $100 should be paid.    This was never paid, and we submit that there was no waiver.

There is nothing in the record to show that Mrs. Witherspoon knew there was any cotton crop.    Opposite counsel is in error when he says that the mules necessarily would have been sold, if the rent had been demanded, for the record shows that there was sufficient corn on the place to pay the rent.

In the case of *Ripley* v. *Insurance Co.*, 30 N. Y. 136, relied on by opposite counsel, at page 164, it is said : " It seems to me that a waiver, to be operative, must be supported by an agreement founded on a *valuable consideration,* or the act relied on as a waiver must be such as to estop the party from insisting on the performance of the contract."    Where is the valuable consideration here ? Counsel says it was the continuation of Mason as tenant.    Why, that was the agreement made by him in the original five years lease.

I submit that the agreed facts negative the proposition that complainant was negligent in the assertion of her rights, and that there is nothing upon which any estoppel can be protected.

Waiver is generally created upon *knowledge of all the facts by both parties.*    Bigelow on Estoppel, p. 639.

While Mason knew all the facts, the testimony shows that Mrs. Witherspoon knew none.

CAMPBELL, J., delivered the opinion of the court.

The judgment is right.    There is no ground of estoppel to Mrs.

W., in favor of the appellants. She did nothing to mislead them, nor could they have been misled, nor in fact were they. She did not waive her legal demand against them, for she did not know of it when she wrote the letter to Mason. This letter was not intended by her to be the basis of any action by any one, and was not such a one as she could suppose would be made such, nor could it be justly so regarded by anybody ; and the claim by the appellants that they were induced by it to change their position to their harm, looks very much like a pretext and an after-thought to defeat the just and legal demand of the plaintiff. Amer. & Eng. Encyclopedia of Law, Title, Estoppel and cases cited, p. 17.

*Affirmed.*