290 So.2d 599 (1974)
RESOLUTE INSURANCE COMPANY
v.
STATE of Mississippi.
No. 47412.
Supreme Court of Mississippi.
February 25, 1974.
*600 Daniel, Coker, Horton, Bell & Dukes, Donald V. Burch, Jackson, for appellant.
A.F. Summer, Atty. Gen., by T.E. Childs, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Presiding Justice.
This is an appeal from a judgment of the Circuit Court of Claiborne County, Mississippi, in favor of the State of Mississippi against the appellant, Resolute Insurance Company, on certain bail bond forfeitures. The appellant insurance company filed a petition in the circuit court requesting the court to vacate judgment nisi on four alleged bail bonds. The appellant contended that the alleged bonds were not valid. The insurance company offered evidence on the petition. The following facts were brought to the court's attention.
In September, 1971, Eddie Gorham, Jacqueline Mae O'Hara, Barney Joseph O'Hara and Tommy Riley were arrested for theft and incarcerated in the Claiborne County jail. On September 24, 1971, the deputy sheriff received a telephone call from a person who identified himself as John Wilson, a bail bondsman in Georgia. Wilson advised the deputy sheriff that the persons above named were his clients. He wanted to know the amount of the bonds required to release the prisoners. Wilson informed the deputy sheriff that he had power of attorney from Resolute Insurance Company. The deputy sheriff advised Mr. Wilson that Resolute Insurance Company's bail bond would be accepted by him. The next day, Saturday, September 25, Mr. Wilson arrived in Port Gibson driving a car with Georgia license tags. He presented the deputy with a business card bearing the name "A-Bonding Company, Augusta, Georgia." He also gave the deputy a qualifying power of attorney and four powers of attorney to make bond. He said that he could not file the qualififying power of attorney since the clerk's office was closed. After looking at these documents, the deputy released the prisoners on Mr. Wilson's bonds signed by him.
The four prisoners were indicted, but failed to appear at the January, 1972 term *601 of circuit court. Judgment nisi was entered against the four prisoners and the two sureties, A-Bonding Company and Resolute Insurance Company, in the amount of twelve thousand dollars ($12,000.00). Scire faciases were issued requiring the prisoners and sureties to appear at the May term of court. Appellant contends that it first became aware of the four bonds when its Mississippi agent was served with the scire faciases in April, 1972. Appellant filed a petition to vacate on May 20, 1972. Final judgment of forfeiture was entered on May 24, 1972, the petition to vacate was denied, and this appeal ensued.
The following uncontradicted facts can be gathered from the record of the hearing on the petition to vacate: The John Wilson who called and arranged for the release of the prisoners was the son of a former agent of Resolute Insurance Company. The elder John Wilson died in August of 1971, and soon after his death, an attorney from Resolute Insurance Company was sent to Augusta, Georgia to gather all papers and documents pertaining to Resolute Insurance Company. Evidently, the four powers of attorney and qualifying power of attorney were acquired by the son, John Wilson, without the knowledge of Resolute. The son was never an agent for Resolute, nor was he ever a licensed bondsman in Georgia or Mississippi. By using the above mentioned documents, the son, John Wilson, obtained the release of the four prisoners in question.
The qualifying power of attorney given to the deputy sheriff was obviously a Georgia power of attorney. It had written across the top of the document the following words: "This power cannot be filed without proof of valid insurance license issued by Georgia Insurance Department."
The general agent of the insurance company testified that John Wilson was the son of their agent John S. Wilson, who had died on August 4, 1971. He testified that he had no knowledge of the bonds until April, 1972, and that John Wilson, the son of their agent, was never an agent for Resolute Insurance Company. He pointed out that bonds signed by the son of their deceased agent did not have the corporate seal on them.
The insurance company's general agent admitted on cross-examination that the qualifying power of attorney and the numbered powers of attorney attached to the bonds were sent out to their agent, the senior Mr. Wilson in blank, allowing the agent to insert his name at a later time.
The petitioner introduced two certificates from the Commissioner of Insurance of Mississippi in which the commissioner certified that neither John S. Wilson, Sr., nor John S. Wilson, Jr. was licensed to sell insurance in Mississippi.
It is evident from the testimony in this case that John S. Wilson, Jr. was not the agent of Resolute Insurance Company at the time he signed the bonds and filed the power of attorney; nor does the State of Mississippi contend that he was an agent of the insurance company in signing the bonds.
The State contends that the final judgment forfeiting the bail bonds should be affirmed, because it is said the appellant, Resolute Insurance Company, is estopped to deny that the bonds filed and forfeited were genuine. This contention is based upon the fact that the powers of attorney were issued and delivered to their agent without inserting the name of the person empowered to make the bond. Further, it is said, the powers of attorney were numbered and the insurance company knew, or should have known, that these documents were outstanding at the time the company retrieved the papers from the widow of the deceased agent. Therefore, the company should have notified the officers of the surrounding states. Thus, it is argued that since no notice was given to the public, the insurance company cannot now claim these documents to be invalid.
*602 After careful consideration we have reached the conclusion that Resolute Insurance Company was not estopped to show that the alleged bail bonds filed in the circuit court in this case were in fact invalid, for the following reasons.
It is true that one of the most usual applications of the doctrine of estoppel in pais arises where there has been a misrepresentation or concealment of material facts on the part of the person or company to be estopped. It has long been an established rule of equity [now adopted by courts of law] that where one by his acts or representations [or even by his silence when he ought to speak] intentionally or through culpable negligence induced another to believe that certain facts exist so that he acts on these facts to his hurt and prejudice, such person may invoke the doctrine of estoppel against one who induces or by his negligent acts causes, a person to act to his hurt on such facts. Kelso v. Robinson, 172 Miss. 828, 161 So. 135 (1935); Clark v. Dorsett, 157 Miss. 365, 128 So. 79 (1930); Staton v. Bryant, 55 Miss. 261, 272 (1877); 19 Am.Jur. Estoppel § 51, at 653; § 55, at 661 (1939).
The rule that one may be estopped by his silence, however, presupposes that one not only had the duty to speak out, but that he had an opportunity to do so, and in addition, that his failure to speak when the opportunity was presented, was either intentional or in negligent disregard of plain dictates of conscience and justice. Canal-Commercial Trust & Savings Bank v. Brewer, 143 Miss. 146, 143 Miss. 184, 108 So. 424, 109 So. 8, 47 A.L.R. 45 (1926). Moreover, the concealment of facts relied on to sustain the estoppel must have been made with the knowledge of the facts by the party to be estopped [Griffin v. Brock, 33 So. 969 (Miss. 1903); Houston v. Witherspoon, 68 Miss. 190, 8 So. 515 (1890)]; or it is shown that the person to be estopped was grossly negligent in failing to know the true facts. Monroe Banking & Trust Co. v. Allen, 286 F. Supp. 201 (Miss.D.C. 1968); 19 Am.Jur. Estoppel § 48, at 646 (1939).
We must bear in mind that the record in this case shows conclusively that the insurance company had no knowledge that the son of their deceased agent had obtained possession of the various powers of attorney furnished his father by the insurance company. Moreover, the company had no knowledge that Mr. Wilson had forged the name of Resolute Insurance Company on the bail bonds here in issue.
It has been pointed out by one text writer that a bail bond is a contract between the obligor and the state, and to render an obligor liable thereon, it is essential that he shall be legally competent to execute the bond. 8 C.J.S. Bail § 56, at 167 (1963).
Another text writer has said:
"A bail bond taken without authority is void, and the sureties on such a bond are not bound by the subsequent forfeiture of the bond. A bail bond or recognizance in a criminal case which is void because taken without authority is void for all purposes and it may not be enforced as a common-law obligation or otherwise. The state has been denied the benefit of estoppel in the case of bonds or recognizances which have no vaildity, and in the case of a bond or recognizance taken contrary to statute by an officer of the state, when the state is the plaintiff." 8 Am.Jur.2d Bail § 97, at 839 (1963).
We have a statute on the subject in this state as follows:
"No sheriff or other official shall accept bond from a professional bondsman unless such bondsman is licensed under the provisions of this chapter and unless such bondsman shall exhibit to such court a valid certificate or license issued by the department, and the license of such bondman shall not have been suspended or revoked. The department may, upon request, furnish to any sheriff, district, circuit court, or municipal *603 judge additional information which would appropriately identify such duly licensed professional bondsmen and insurers whose operation in the writing of bail is covered by this chapter." Miss. Code Ann. § 83-39-23 (1972).
Deputy Sheriff McCay admitted under oath that he took no precaution to comply with the foregoing statute. He admitted that he made no effort to determine whether or not the person offering the bonds in the name of Resolute Insurance Company had a license to sell insurance in Mississippi. Had he done so he would have discovered that neither Mr. Wilson nor his father had ever been licensed to sell insurance in Mississippi.
A good deal of authority has been cited on the law of agency in this case as to the apparent authority of an agent, none of which is applicable since no agent or agency is involved herein. Some of the expressions used by the court are nevertheless interesting. For example, in Dozier v. Freeman, 47 Miss. 647 (1873) the Court said: "Where one deals with another, acting under delegated authority, it is his own folly, if he does not inform himself of the scope of the authority. The principal is only bound so far as he has consented to be bound." [47 Miss. at 660].
It would appear, therefore, to be wise to determine not only how much authority one has to sign a bail bond, but whether he is in fact an agent with any authority.
Since Mr. John Wilson was not an agent of Resolute Insurance Company and was not authorized to sign the name on the bonds, the insurance company is not obligated to pay the forged bond. Moreover, the insurance company is not estopped to assert the truth, since they had no knowledge of the forgery, and the fact that the powers of attorney issued to its deceased agent came into the possession of a person not its agent does not establish that the insurance company was guilty of culpable negligence sufficient to estop the insurance company from showing the true state of facts.
The final judgment forfeiting the four bonds here involved is reversed and the appellant, Resolute Insurance Company, is hereby released and discharged.
Reversed and rendered.
PATTERSON, INZER, SUGG and WALKER, JJ., concur.