HOHENBERG BROS. COMPANY, Plaintiff-Appellee,

v.

J. A. KILLEBREW, Defendant-Appellant.

No. 74–1274.

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1974.

Rehearing and Rehearing En Banc Denied Jan. 21, 1975.

John W. Barrett, Lexington, Miss., Heber A. Ladner, Jr., Jackson, Miss., for defendant-appellant.

Arnold F. Gwin, Greenwood, Miss., for plaintiff-appellee.

Before CLARK and RONEY, Circuit Judges, and RUSSELL, District Judge.

CLARK, Circuit Judge:

This diversity action was brought by Hohenberg Brothers Company (Hohenberg), a Memphis-based cotton merchandiser, against J. A. Killebrew, a Mississippi farmer, for specific performance of a purchase and sales agreement covering Killebrew's cotton crop on approximately 400 acres of land in Holmes County, Mississippi. An unprecedented rise in the price of cotton during the summer months of 1973 best explains why the validity of this seemingly simple contractual transaction is now being contested.

The dispute involves a determination of whether either of two purchase and sales agreements, one agreement having been drafted by each party, constitutes a binding, enforceable contract between the parties. The cause was tried to the court without a jury. The following facts found by the district judge are amply supported by the record. Both parties were represented by agents, D. T. Sayle, Jr., acting on behalf of Killebrew, as he had done for approximately 30 years, and E. K. Hyman, a Mississippi-based representative of Hohenberg. In February of 1973, at Sayle's suggestion, Killebrew signed and delivered to Sayle a 1-page purchase and sales agreement form covering the sale of Killebrew's 1973 cotton crop. All of the blanks in this document were completed except for the name and signature of the then unknown purchaser. On the second of March, Sayle secured an oral commitment through Hyman that Hoh-

enberg would purchase Killebrew's crop at the prices set forth in the 1-page contract. Hohenberg immediately sent Sayle its standard form 3-page purchase and sales agreement on which was typed the price quotations, cut-off dates and acreage previously agreed upon and identical to the terms which had been inserted in Sayle's 1-page document. The 3-page document also contained several provisions different from and additional to those found in the 1-page document, but the trial court found no material differences in the two agreements. Upon receipt of the 3-page document, Sayle signed the name of J. A. Killebrew to one copy and returned it to Hohenberg. The trial court concluded, however, that Sayle acted beyond the scope of his agency in signing Killebrew's name. Sayle also mailed a copy to Killebrew.[1]

At a later date, found by the district court to probably be at some time during the month of March, Hyman executed the 1-page agreement for Hohenberg, dating it as of March 5, 1973 in conformity with the date of the 3-page agreement. Killebrew received a copy of the 3-page agreement during the middle of March but did not communicate with either Sayle or Hohenberg about it until the first week in August. At that time, in response to an inquiry from Hohenberg concerning the status of Killebrew's crop, Killebrew replied that they did not have a contract. The district court, finding that the 1-page contract was enforceable against Killebrew, granted specific performance pursuant to a stipulation between the parties and awarded attorney's fees as provided in the contract. We affirm.

■ Killebrew was under no compulsion to sign the blank 1-page contract other than his desire, having finally decided upon the terms of sale that would fully satisfy his expectations, to rid himself of involvement in the task of locating a consenting purchaser. Consequently, when he delivered the 1-page document to Sayle, he vested Sayle with full authority to take the necessary measures to close a contractual relationship with a purchaser willing to meet the terms set forth. Having vested such authority in Sayle, Killebrew committed himself to be bound by any seasonable acceptance of the contract terms that Sayle could secure. As an incident of this commitment Killebrew assumed an affirmative duty to notify Sayle of any subsequent retraction of the offer. Absent such notification, Sayle could legally bind Killebrew without the necessity of obtaining any further assent from him. This open-ended offer was orally accepted by Hohenberg on the second of March, prior to any change in the market, and confirmed in writing by delivery to Sayle of the 3-page document.

■ Killebrew's attempted characterization of Hohenberg's 3-page document as a substantially different counteroffer, which constituted an automatic rejection of the 1-page document, collapses under the express provisions of Section 75-2-207 of the Mississippi Code of 1972.[2] This section of Mississippi's version of the Uniform Commercial Code dictates that we view delivery of the 3-page document as a written confirmation of Hoh-

1. The evidence is in conflict as to whether Sayle sent to Killebrew a copy of the 3-page agreement with Killebrew's name signed by Sayle. In view of the district court's finding that Killebrew was not estopped to deny Sayle's authority to sign his name or the validity of the 3-page agreement, we assume for the purposes of our decision that the copy sent to Killebrew did not purport to show Killebrew's signature.

2. Section 75-2-207 provides:
(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
(a) the offer expressly limits acceptance to the terms of the offer;
(b) they materially alter it; or

enberg's acceptance of the 1-page document. These two documents present a classic opportunity for application of Section 75–2–207(1) which rejects the common law mirror image rule and converts what under the common law would have been a counteroffer into an acceptance or confirmation even though the acceptance or confirmation includes terms additional to or different from those offered or agreed upon. *See* White & Summers, Uniform Commercial Code § 1–2, at 24 (1972). Analysis of the effect of the different and additional terms has been rendered unnecessary by Hohenberg's desire to enforce only those terms found in the 1-page agreement.[3]

Additionally, under the facts of this case, equity demands that Killebrew not be heard to complain of enforcement of the precise agreement to which he signified his unconditional commitment by the execution of the 1-page purchase and sales agreement.

■■ Any possible right to reject a seasonable acceptance of the 1-page agreement was forfeited by Killebrew's failure, upon receipt of Hohenberg's executed 3-page agreement, to timely notify a representative of Hohenberg of any objection or dissatisfaction. In a case such as this, where a party receives a writing containing essential terms identical to those expressed in a previously executed contract proposal, that party has a duty to speak out if he does not intend to be bound by the terms he proposed. Failing in this duty, his silence constitutes·an estoppel. As recognized by the Mississippi Supreme Court in Resolute Ins. Co. v. State, 290 So.2d 599 (Miss.1974): "It has long been an established rule of equity [now adopted by courts of law] that where one by his

acts or representations [or *even by his silence* when he ought to speak] intentionally or through culpable negligence induced another to believe that certain facts exist so that he acts on these facts to his hurt and prejudice, such person may invoke the doctrine of estoppel against one who induces or by his negligent acts causes, a person to act to his hurt on such facts." *Id.* at 602 (brackets found in original text); *accord,* Kelso v. Robinson, 172 Miss. 828, 161 So. 135 (1935).

■■ The three requirements of estoppel by silence, (1) that the party had a duty to speak, (2) that his failure to speak was either intentional or in negligent disregard of plain dictates of conscience and justice, and (3) that the other party relied on the fact of silence to his detriment, are clearly satisfied under the facts of this case. First, having received an executed 3-page agreement containing terms also found in the 1-page contract offer he had previously signed Killebrew had a duty to promptly notify Hohenberg of his claim that no contract had been finalized. Second, since it was clearly foreseeable that Hohenberg would enter into commitments for either the processing or resale of the cotton, Killebrew's failure to notify Hohenberg of any objections for some six months after receipt of the 3-page document was in obvious disregard of the dictates of good conscience. Third, Hohenberg relied upon the apparent validity of the contract, executing a second contract covering resale of the cotton. The market purchase of other cotton to satisfy this second contract at the time Hohenberg was notified of Killebrew's rejection moreover would have cost Hohenberg al-

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such

case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code.

3. The effect of different or additional terms contained in an acceptance or confirmation are governed by Section 75–2–207(2).

most double the amount contracted for with Killebrew. In sum, Killebrew's March to August silence estopped him to disavow the binding contractual effect of the 1-page contract he had signed after Hohenberg's acceptance of his terms had been so long and clearly evinced.

The judgment appealed from is affirmed and the cause is remanded to the district court with directions to fix an additional reasonable appellee's attorney fee on this appeal.

Affirmed and remanded.