United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 21, 2002**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-60713
Summary Calendar

C.I.O.S. FOUNDATION,

Plaintiff-Appellant,

VERSUS

MISSISSIPPI INSURANCE SERVICES, INC.;
ALBERT J. KOSSMAN, JR.,

Defendants-Appellees.

Appeal from the United States District Court
For the Northern District of Mississippi, Greenville Division

(4:00-CV-1-D-A)

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This diversity case involves a failed loan from the Christ is

Our Salvation Foundation (C.I.O.S.) to Naguchi Trading Company,

Inc. (NTC). C.I.O.S. lent $650,000 to NTC in part because another

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

company, Berkston Insurance (Berkston), agreed to guaranty the loan on NTC's behalf. Al Kossman, an insurance agent with Mississippi Insurance Services, Inc. (MIS), helped NTC obtain the loan from C.I.O.S. and the guaranty from Berkston. But when NTC defaulted on the loan, Berkston failed to make good on its guaranty. C.I.O.S. sued Kossman and MIS for its damages associated with the failed loan, arguing that Kossman violated his responsibilities to C.I.O.S. and that he misrepresented Berkston's financial viability. The district court granted Kossman and MIS's motions for summary judgment on the ground that C.I.O.S. had no formal agency relationship with Kossman or MIS. On appeal, C.I.O.S. argues that it is entitled to recovery under the alternative theories of gratuitous agency and equitable estoppel. We affirm.

# I.

George W. Hood, Jr. formed NTC to distribute the seafood processed by another one of his companies, Procesadora Del Mar (PDM). Both NTC and PDM had been in business for approximately two years before C.I.O.S. lent money to NTC. In late 1996, Hood began to seek outside funding for his seafood businesses. At around this time he met Al Kossman. Hood had several conversations with Kossman, and on one of those occasions Hood discussed his need for capital. Kossman suggested that Hood contact David Stokes, a man that Kossman believed "front[ed] for a trust" that made business

2

loans.

Hood took Kossman's suggestion and met with Stokes to discuss a possible loan for NTC. Stokes informed Hood that he occasionally procured loans from C.I.O.S., a charitable religious foundation. At this stage in the negotiations, however, Stokes told Hood that C.I.O.S. was not interested in extending him a loan because his companies were heavily leveraged. Hood then asked Kossman to serve as his agent for the purposes of securing insurance and putting together a project prospectus that would make NTC a more attractive loan applicant. Kossman agreed to work on Hood's behalf and turned to Berkston Insurance in an attempt to procure a guaranty bond. Meanwhile, Hood drafted a "proforma" containing estimates of NTC's projected performance.

Once Stokes reviewed NTC's proforma and learned that Kossman was working to secure a guaranty bond, he became more receptive to the idea of C.I.O.S. lending money to NTC. Stokes referred Kossman and Hood to Kent Reynolds, the financial controller for C.I.O.S. During their negotiations, Reynolds requested that Kossman research the viability of Berkston Insurance; Kossman told Reynolds that he would get something in writing. On December 31, 1996, Kossman faxed Reynolds the Best Rating Guide's insurance ratings for Berkston's reinsurers, but not the ratings for Berkston itself. After receiving these documents, C.I.O.S. decided to loan NTC $650,000; the loan was scheduled to close on January 8, 1997. There is no evidence that Reynolds requested any additional

3

information from Kossman before closing.

On January 7, 1997, the day before closing, Hood's attorney provided Reynolds with various documents, including additional copies of the Best Rating Guide's rating for Berkston's reinsurers. At the closing, Hood provided additional information obtained by Kossman relating to NTC's ability to obtain insurance. Based on this information and Berkston's guaranty bond, C.I.O.S. closed the loan for NTC. Two days after Reynolds signed the loan, but before C.I.O.S. transferred the money to NTC, Hood's attorney faxed to Reynolds instructions for wiring the loan proceeds and Berkston's financial statement. Reynolds did not review the financial statements before he wired the money to NTC.

NTC defaulted on the loan after making only one payment. In April 1997, C.I.O.S. extended the term of the loan and Berkston reaffirmed its guaranty. NTC, however, continued to miss payments and, when it defaulted on this extended loan, Berkston refused to honor its guaranty. C.I.O.S. sued NTC, Berkston, and Hood, and obtained default judgments against all three. While C.I.O.S. was suing Berkston to collect on the guaranty, it learned that Berkston was not a financially viable company and that it was under FBI investigation. As a result of this information, C.I.O.S. made no attempt to collect on the its default judgment against Berkston. Instead, C.I.O.S. sued Kossman and his firm, MIS, alleging that Kossman knew or should have known that Berkston was not financially viable.

4

Kossman and MIS filed motoins for summary judgment arguing that there is no evidence (1) that Kossman knew Berkston to be insolvent, (2) that Kossman breached a duty to C.I.O.S. to determine Berkston's solvency, or (3) that C.I.O.S. suffered any damages as a result of Kossman's actions. The district court granted the motions for summary judgment on the grounds that there is no proof that Kossman knew that Berkston was insolvent or that Kossman was an agent for C.I.O.S. C.I.O.S. appeals arguing that the district court erroneously failed to address whether it can recover under Mississippi's gratuitous agency and equitable estoppel doctrines.

## II.

"We review a district court's ruling on motion for summary judgment de novo, applying the same standards as those that govern the district court's determination." McKee v. Brimmer, 39 F.3d 94 (5th Cir. 1994). Summary judgment must be granted if the court determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To ascertain whether there are genuine issues of material fact in this Mississippi-based diversity action, we look to the substantive law of Mississippi. Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 177-78 (5th Cir. 1990). We must view the evidence in the light most favorable to

C.I.O.S., the nonmoving party.  <u>Barhonovich v. Amer. Nat. Ins. Co.</u>, 947 F.2d 775 (5th Cir.1991).

**III.**

C.I.O.S. argues that Kossman breached his duty to C.I.O.S. under the doctrine of gratuitous agency when he failed to provide C.I.O.S. with Berkston's <u>Best Rating Guide's</u> insurance ratings.  In Mississippi, a person becomes a gratuitous agent when he "makes a promise or engages in other conduct which (1) 'he should realize will cause another reasonably to rely upon the performance of definite acts of service by him as the other's agent,' and (2) 'which causes the other to refrain from having such acts done by other available means.'" <u>Lee Hawkins Realty, Inc. v. Moss</u>, 724 So.2d 1116, 1119 (Miss. Ct. App. 1998) (quoting the <u>Restatement (Second) of Agency</u> § 348 (1957)).  Even if Kossman became C.I.O.S.'s gratuitous agent, he can only be liable if he breached his limited duty of providing C.I.O.S. with Berkston's <u>Best</u> rating and his negligence caused C.I.O.S. to make the loan.  <u>See</u> <u>id.</u> at 1120.

C.I.O.S. has not presented competent summary judgment evidence that Kossman was its gratuitous agent because there is no evidence that Kossman promised to provide C.I.O.S. with Berkston's <u>Best</u> rating or that he should have realized that Reynolds was relying on him to provide that service.  At all times during the negotiations,

6

Kossman was acting as Hood's formal agent. To the extent that he provided information to C.I.O.S., it was in furtherance of Hood's interest in obtaining the loan. After Kossman provided Reynolds with the Best ratings for Berkston's reinsurers, Reynolds never asked for any additional financial information on Berkston.

Furthermore, C.I.O.S. has presented no evidence that Kossman's failure to provide it with Berkston's Best rating caused it to sign the loan. First, C.I.O.S. has not indicated whether Berkston's Best ratings would have exposed its insolvency. Second, the undisputed evidence shows that Reynolds signed the loan on behalf of C.I.O.S. without seeing Berkston's Best rating or its financial statements. As stated above, after Kossman provided him with the Best ratings for Berkston's reinsurers, Reynolds never asked for any additional financial information on Berkston. Although Hood's lawyer provided Reynolds with Berkston's financial statements before he transferred any money to NTC, Reynolds admits that he did not review the financial documents until after he wired the money to NTC.

**IV.**

C.I.O.S. also argues that it is entitled to recover under the doctrine of equitable estoppel. To make a claim for equitable estoppel under Mississippi law, C.I.O.S. must show that (1) Kossman misrepresented or concealed material facts, (2) with knowledge or

7

imputed knowledge of such facts, and (3) with the intent that C.I.O.S. rely upon his misrepresentation or concealment of facts. <u>Turner v. Terry</u>, 799 So.2d 25, 37 (Miss. 2001). C.I.O.S. must also show that (4) it was ignorant of the misrepresented or concealed facts and (5) that it actually relied upon the misrepresentation to its detriment. <u>Id.</u> "The doctrine of equitable estoppel is not favored and should only be applied when equity clearly requires it." <u>Id.</u> at 37-38.

C.I.O.S. has not submitted competent summary judgment evidence to state a claim for equitable estoppel. There is no evidence that Kossman knew about Berkston's financial problems and there is no basis for imputing knowledge of Berkston's insolvency to Kossman. There is also no evidence that Kossman concealed anything from C.I.O.S. Kossman submits that he had no idea that Berkston was insolvent and that he provided C.I.O.S. with all of the financial information on Berkston that he had. Hood's deposition testimony corroborates Kossman's version of the facts. Hood stated that Kossman seemed genuinely surprised when he learned that Berkston was insolvent and that he told Hood that Berkston had "duped" him. C.I.O.S. points to no contravening evidence in the record. In its response to the appellants' motions for summary judgment, C.I.O.S. states only that it "<u>feels</u> that Kossman should have known of Berkston's financial problems, because he was representing himself to be a reputable insurance agent." (ROA at 198) (emphasis added). Furthermore, C.I.O.S.'s original brief does not even allege that

8

Kossman knew or should have known of Berkston's poor financial situation. C.I.O.S. builds its equitable estoppel argument around superseded cases that did not require the defendant to have knowledge of the facts that he misrepresents. (Appellant's Br. at 10.) (citing Covington v. Page, 456 So.2d 739, 741 (Miss. 1984), PMZ Oil Co. v. Lucroy, 449 So.2d 201, 206 (Miss. 1984), and Resolute Ins. Co. v. State, 290 So.2d 599, 602 (Miss. 1974)). As stated above, the Mississippi Supreme Court has since made the defendant's knowledge of the misrepresentation or concealment an element of equitable estoppel. See Turner, 799 So.2d at 37.

In its reply brief, C.I.O.S. asks us to infer that Kossman knew about Berkston's financial situation because he allegedly had access to Berkston's Best rating. This argument is waived because C.I.O.S. did not raise it in its original brief. Webb v. Investacorp, Inc., 89 F.3d 252, 257 n.2 (5th Cir. 1996) ("An appellant abandons all issues not raised and argued in its initial brief on appeal.") (quoting Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994)). But even assuming that Kossman had access to Berkston's Best rating, there still is no evidence that he knew or should have known that Berkston was insolvent. C.I.O.S. provides no evidence that Kossman actually read the Best rating, and even assuming that he did, there is no indication in the record that the Best rating exposed Berkston's insolvency. We therefore find insufficient summary judgment evidence to support C.I.O.S.'s claim for equitable estoppel.

9

**V.**

Viewing the evidence in the light most favorable to C.I.O.S., we find no material issues of fact regarding C.I.O.S.'s right to recover under the doctrines of gratuitous agency or equitable estoppel.  We therefore AFFIRM the district court's ruling.