444

No. 32,505

Dorothy West, *Appellee*, v. The Metropolitan Life Insurance Company, *Appellant*.

(61 P. 2d 918)

Opinion filed November 7, 1936.

*E. S. McAnany, T. M. Van Cleave, W. L. Phillips* and *B. W. Alden*, all of Kansas City, for the appellant.

*A. J. Herrod*, of Kansas City, for the appellee.

The opinion of the court was delivered by

Burch, C. J.: The defendant appeals from a judgment rendered against it on a claimed contract of insurance. Without now specifying the assignments of error, it may be remarked that the plaintiff, during the course of the trial, urged four reasons why she should recover.

1. On an insurance contract based on her husband's application as modified by oral testimony as to when it became effective.

2. On an oral contract of insurance.

3. On the policy which it was claimed had been issued.

4. On the negligence of the company in delivering the policy.

It is advisable the pleadings be fully reviewed.

The amended petition alleged plaintiff was the widow of John J. West, and that defendant was an insurance company and maintained an office in Kansas City, Kan., George H. Means being the manager in charge; that on September 21, 1933, one Bybee, defendant's agent, solicited John J. West to make an application for insurance and an application was prepared, Bybee writing the answers to the questions and West signing the application. It was then alleged:

"It was orally agreed that said contract of insurance should be in full force and effect from the time the application therefor was approved by said defendant after John J. West had received a physical examination by Dr. E. D. Williams, defendant's authorized examining physician. About September 23, 1933, Dr. E. D. Williams made an examination of West, found he was in good physical condition, and reported that fact to defendant, and approved his application for insurance."

It was further alleged that West was to pay the premium monthly, "the first payment not to be made until the insurance policy was delivered," and that Bybee assured West the contract of insurance would become effective immediately on approval of the application, a copy of which was attached to the petition and will be referred to later; that in October Bybee informed West and his wife the application had been accepted; that it would be a week or two before the policy would arrive in Kansas City, when Bybee would collect the first month's premium, and at that time Bybee told West the application had been accepted and the policy was in force; that on November 2, 1933, West inquired of Bybee and Means whether the policy had been "executed by defendant" and was informed that it had, but had not been received in Kansas City; that West and his wife relied on the statements of Bybee and Means, were ready and able to pay premiums due and refrained from effecting insurance in another company; that from September 21, 1933, to the date of West's death, another policy was in force on West's life and that in making application for it West was informed by defendant's agent it was not necessary to nor did he pay any premium until he received the policy, and that defendant's agents had established a custom of not collecting the first premium until delivery of the policy, and of assuring applicants the insurance was in full force immediately after the application was approved by defendant at its home office in New York, and that West and the managers of defendant's office in Kansas City knew of the custom, and many policies were issued prior to payment of the premium; that West

was drowned November 3, 1933, and plaintiff made due proof of loss; that on November 16, 1933, plaintiff was informed by Means that West's application had been approved, the policy issued and it was then in Means' office; and that since December 1, 1933, defendant had denied the application had been approved or the policy issued, and refused payment to plaintiff.

Defendant's answer admitted certain allegations of the petition concerning which there is no dispute, and denied other allegations specifically. As a second defense, it set up certain paragraphs of the application, being the same as shown in the exhibit to plaintiff's petition. There was also a verified denial that Bybee had any authority to enter into the oral and other representations and agreements set out in plaintiff's amended petition and alleged to have been made by Bybee.

Plaintiff's reply stated she did not know whether the application signed by West contained the statements set forth in the application; that West did not read the application but relied on the statements of Bybee as to what the application contained and was not informed by Bybee that the application contained any of certain statements, to which reference will be made later.

Appellant specifies as error the overruling of its demurrer to plaintiff's evidence, which showed that on September 23, 1933, defendant's agent Bybee solicited West to make an application for insurance; that a certain type of policy was agreed on, and that Bybee or one Lucas wrote down the answers to the written questions. There is no claim that any answer made was not correctly stated on the application. Thereafter West signed the application, which in part stated:

"*It is understood and agreed:* 1. That the foregoing statements and answers are correct and wholly true, and together with the answers to questions on part B hereof, *they shall form the basis of the contract of insurance, if one be issued.*

"2. That *no agent, medical examiner* or any other person, except the officers of the company have power on behalf of the company: (a) *to make, modify or discharge any contract of insurance,* (b) to bind the company by making any promises respecting any benefits under any policy issued hereunder."

"4. That *the company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the applicant, in which case such policy shall be deemed to have taken effect as of the date of issue as recited on the first page thereof.*" (Italics inserted.)

With respect to when the insurance applied for should be in force, two witnesses, Mrs. West and her mother, testified. Mrs. West testified that while the application was being prepared West asked when it would go into effect, and Lucas said as soon as the doctor examined him and passed on the application it would be in effect; that West wanted to be examined by Doctor Williams, and Lucas or Bybee said that as soon as John (West) had been examined and the application approved by the local doctor (Williams) the insurance would be in effect and the policy would arrive in a few days. The mother's testimony on the point, while brief, was to the same effect. All of this particular testimony was admitted over objection. After the above conversation and after the blanks in the application had been filled, West asked "if it contained all he had told him, and Bybee said it did." West said, "I'll take your word for it," and thereafter, without reading the application, signed it.

The testimony as to when West was examined by Doctor Williams is scant, Mrs. West stating he went to Williams' office September 25. On cross-examination, she stated she never heard that Doctor Williams desired to make further examination. Part B of the application, which contains the applicant's answers to the doctor, shows that it was signed by West in Doctor Williams' presence on October 29, 1933. Plaintiff's evidence did not show why the delay occurred nor why her husband's physical examination was not completed earlier, nor does it attempt to show any error in the date. Mrs. West testified that after the application was first made, the next thing she heard was about October 23, when Bybee came to the house and said West had passed the examination at the home office and his application had been approved, and a few days later returned and said the policy had not arrived; that her husband had called Bybee and talked to Means about why the policy had not arrived. Mrs. West further testified that her husband was drowned November 3, and about November 15 she, with a Mr. Showalter, went to Means' office and inquired about payment of the policy and Means told her it was too bad her husband didn't pay the premium when the application was made, and that Means said the policy was in his office; that the next day Showalter told her Means had said he made a mistake, that it was a rejection slip that was in the office and not a policy, and a few days later Means told her the same thing. Showalter testified to like effect but said Means told him the same night he had made a mistake in stating the policy was

there; that what he told him was a policy was a rejection slip. Plaintiff also offered in evidence an application of West to the company in connection with a $2,000 policy dated December 5, 1930, a part thereof showing the provision to be the same as quoted above, and also a $1,000 policy dated January 27, 1931, showing endorsement of payment of the first premium on January 30, 1931. In connection with the $1,000 policy, Mrs. West testified that when it was applied for in 1931, Bybee told West when he was examined and approved by the doctor the insurance would be in force. Plaintiff also introduced the requisition or request of the company for an agent's license to issue to Bybee, and the license to Bybee, and similar documents with reference to Lucas. The requisitions are "for authority permitting such agent to transact its authorized business" and the licenses are "to transact its authorized business." In the above recital we have not noted the objection of defendant to much of the testimony offered and admitted in evidence. Except as stated, there was no evidence that would tend to show West knew anything about the uses and customs of the company and its agents, and no evidence whatever that West knew that either Bybee or Lucas had licenses granted by the state of Kansas. Neither was there any evidence that the company was aware of any custom or use that its agents represented they had any authority to bind the company as to when insurance became effective, further than as stated in the application for insurance. The testimony later offered by the defendant did not supply any failure or want of proof in plaintiff's testimony.

It may be doubted that under the allegations of the petition Bybee was charged with being any but a soliciting agent, but in any event the verified denial of the answer put in issue his authority to do aught but solicit applications. Lucas, mentioned in the testimony as being an agent, is not mentioned in the petition or reply. Plaintiff offered the request of the defendant company for the appointment of Bybee as an agent and the license issued to Bybee as some evidence of his authority. It was held in *Eikelberger v. Insurance Co.*, 107 Kan. 9, 190 Pac. 611, decided in 1920, that neither a license issued by the insurance department to an insurance agent at the request of his company, nor the statute under which it was issued, had the effect of defining the agent's power to bind his company. The statutes referred to were G. S. 1915, secs. 5178 and 5179, and now appear as R. S. 40-115 and 40-116. When the insurance

code was adopted, in 1927, a change was made in appointment of agents. Provision was made for the appointment of general agents (R. S. 1933 Supp. 40-238). Under this statute, and the proof, there is no showing whatever that either Bybee or Lucas were general agents. Provision was also made for insurance agents who are defined to be individuals *authorized in writing* by any insurance company lawfully qualified to transact the business of insurance, to negotiate or effect contracts of insurance (R. S. 1933 Supp. 40-239). And provision for licenses is made by R. S. 1933 Supp. 40-240. Under R. S. 1933 Supp. 40-244, it is unlawful for any person to represent himself as an insurance agent unless he has complied with the statute. It thus appears that although the statute, request and license do not of themselves define the authority of the agent, the amended statute does require that the agent be authorized in writing by his company. Of this provision, West and those claiming under him must have taken notice. When the plaintiff offered her proof, she made no attempt to procure and show this authority in writing as part of her proof. On the question of sufficiency of proof, we must hold there was a failure to prove that either Bybee or Lucas were any but insurance agents as distinguished from general agents, and were only what is usually called soliciting agents.

We next pass to the question as to whether, in making the claimed statements as to when the applied-for insurance was effective, including therein the claimed waiver of payment of premium, Bybee and Lucas were acting within their authority or apparent scope of it. This needs no extended discussion, for under the statute mentioned above their authority had to be in writing. It was capable of definite ascertainment; West was presumed to know the law, and knowing it he knew that neither agent had the power to make a contract of insurance binding on the company unless one of them was specifically authorized so to do. It can be seen that under the statute there can be no act within the apparent scope of authority; either the agent is authorized or he is not, at least so far as the question before us is concerned.

What has been said disposes largely of the testimony to which objection was made on the ground it tended to vary the contents of the written application. It is not claimed that the answers as returned by West were wrongfully written down; it is conceded they were not. The testimony to which objection was made tended to prove a contract which Bybee and Lucas were not authorized to

make. Neither need we discuss the question of whether or not defendant's agents used some device or did some act which caused West, as a man of ordinary prudence, to refrain from reading his application, and whether he is bound by its statements as to the right of certain persons only to make a contract of insurance, under the rule approved in *Insurance Co. v. Bank*, 60 Kan. 630, 635, 57 Pac. 524. The agents, Bybee and Lucas, could not bind the company by oral modification of the terms of the application.

It also follows from what has been said that if Bybee and Lucas could not agree to oral modifications of the application and conclude a contract thereon, that they could not bind the company by an oral contract.

Assuming the proof showed a policy had been issued by the company, it likewise showed the first premium had not been paid. Under the terms of the application, the company had incurred no obligation.

If it be assumed that the evidence showed an application for and a contract of insurance within the power of the agents to make so as to bind the company, there is a failure to show the delay in its execution and the subsequent delivery of the policy to the insured was caused by the fault or neglect of the company.

The defendant's demurrer should have been sustained. The judgment of the trial court is reversed, and the cause is remanded with instructions to sustain the demurrer.