513 So.2d 582 (1987)
Treman NUNLEY
v.
Barbara MERRILL, Independent Fire Insurance Company and Vanguard Underwriters Insurance Company.
No. 56971.
Supreme Court of Mississippi.
September 23, 1987.
*583 George Martin Via, Booneville, for appellant.
James E. Price, Price, Krohn & McLemore, Corinth, F.M. Bush, Jr., Michael D. Greer, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and ROBERTSON, JJ.
HAWKINS, Presiding Justice, for the Court:
Truman Nunley has appealed from a summary judgment rendered by the circuit court of Prentiss County in favor of the defendants Independent Fire Insurance Company and Vanguard Underwriters Insurance Company in a suit by Nunley to recover for a fire loss of his home. We agree with the circuit court that Nunley had no policy of insurance with either company and affirm.

FACTS
Vassar Insurance Agency, Inc. (Vassar), of Booneville was established by John Vassar in 1955. He and Charles Bolton were the licensed agents for Independent Fire, and in 1980 Vassar sold his interest in the local agency to Bolton. On December 16, 1982, Independent Fire terminated authority of Bolton and Vassar to represent it. During that month a representative of Independent Fire went to the agency in Booneville to recover its policy forms, and according to the company call sheet record no forms were found. Thereafter, Bolton moved away, and Barbara Merrill, who had been secretary-treasurer of the agency, assumed ownership, and conducted all of its business.
Nunley is a retired resident of Tishomingo. Before his retirement, he was self-employed and did logging and pulpwood work.
In early November, 1983, Nunley had gone to the Vassar agency in Booneville and discussed with Merrill the possibility of acquiring homeowners' insurance on his home. Either at that time or in February, 1984, after securing the information necessary to write a policy, Merrill received the premium for the policy in cash and told Nunley that she would get the policy for him. She did not at any time tell him the name of the company that would issue the policy, and he never asked.
*584 Sometime in February, 1984, Nunley received a policy on an Independent Fire insurance form through the mail. This policy was later destroyed in the fire. A copy of the policy (which presumably came from the bank that held the mortgage on Nunley's home) provided coverage on Nunley's home beginning February 21, 1984. In the space provided for the signature of the authorized representative, "Vassar Insurance Company, Inc." was typed.
On April 2, 1984, Nunley drove into Booneville to run some errands. Around 10:30 or 11:00 a.m., he went by Merrill's office to discuss insurance coverage of his trucks and other equipment. Nunley testified that he made his insurance payments on the trucks around the first of each month. Nothing was mentioned during this discussion regarding Nunley's homeowner coverage. After Nunley left Merrill's office, Merrill called Pearl River Insurance Managers (Pearl River) at approximately 11:00 a.m. in an attempt to bind coverage through Vanguard Underwriters for Nunley's home. Pearl River was the general agent of Vanguard Underwriters.
After Nunley left Merrill's office, he returned to his home in Tishomingo County to discover his house had been destroyed by a fire of undetermined causes. Tishomingo Fire Department reports show that they received the call at 9:10 a.m. on April 2, 1984. Nunley notified Merrill that afternoon, and Merrill reportedly told him that his loss "was being taken care of."
Merrill filled out a loss report on either the afternoon of the fire loss or the next morning and mailed it to Pearl River. The report indicated that she was notified of the loss at 4:30 p.m. on April 1, 1984. Merrill claimed that this was an error and she did not think that she was trying to back date the insurance. In addition, Nunley's application for homeowner's coverage was filled out by Merrill on April 2, but had been dated April 1. Merrill stated that she made another error.
The Vanguard Underwriters policy was issued on April 5, 1984. The policy states the inception date as April 2, 1984, and had been antedated to 12:01 a.m. of that day.
Both insurance companies refused to pay Nunley's claim, and the circuit court complaint was filed September 26, 1984, against both companies and Merrill individually.
Independent Fire denied liability based upon the fact that Merrill was not and never had been a licensed agent for it, and had no authority, actual or apparent to represent it. A. Wayne Smith, assistant vice-president of the company, made an affidavit that Independent Fire had no knowledge that the policy had been issued, and no premium had been received by the company.
However, on January 7, 1985, Independent Fire did mail a "special notice" to Nunley informing him that his coverage would expire on the policy anniversary. Nunley argued that this was a sufficient "notice" to create a factual issue as to whether Independent Fire had knowledge that the policy had been issued. In response, Independent Fire averred that the special notice resulted from a computer error, setting out by affidavit that when a suit was filed the law required the company to establish a loss reserve for the pending claim. Independent Fire averred further the policy information and reserve information were routinely entered into the company's computer, which automatically prepared and mailed a routine notice of expiration to the named insured, in this case Nunley.
Based on the facts before it by affidavit and deposition, the circuit court granted summary judgment in favor of Independent Fire under our holding in Resolute Insurance Co. v. State, 290 So.2d 599 (Miss. 1974), the Court finding that Merrill had no authority to issue the Independent Fire policy.
The lower court granted summary judgment to Vanguard Underwriters based on the rulings of this Court that property which has already been destroyed by fire cannot be covered by a fire insurance policy.
Feeling aggrieved by these rulings, Nunley appeals to this Court.

*585 LAW

A.

SUMMARY JUDGMENT REGARDING INDEPENDENT FIRE.
Nunley contends the issue of Merrill's actual or apparent authority is a material issue of fact that should be resolved by trial on the merits, not by summary judgment. Nunley also argues that the "special notice" mailed to him on January 7, 1985, by Independent Fire created an issue of fact as to Independent Fire's knowledge that Nunley's policy had been issued.
The case of Resolute Insurance Co. v. State, 290 So.2d 599 (Miss. 1974), is closely on point and is virtually indistinguishable from the instant case. In that case, the son of a deceased agent for Resolute Insurance Company came into possession of various numbered, blank powers of attorney which he used to make bail bonds for four persons who were arrested and incarcerated. The deceased agent's son procured the release of the four prisoners, and upon the subsequent failure of the principals to appear as required by the bond, forfeiture on the bonds was sought. The insurance company sought to vacate the judgment on the grounds that the bonds had not been executed with the knowledge, consent and authority of the insurance company. However, final judgment was taken on the bonds, and the insurance company appealed. This Court reversed the judgment of the trial court denying the insurance company's petition to vacate the judgment on the bond.
This Court found the following uncontradicted facts regarding the question of agency:
The John Wilson who called and arranged for the release of the prisoners was the son of a former agent of Resolute Insurance Company. The elder John Wilson died in August of 1971, and soon after his death an attorney from Resolute Insurance Company was sent to Augusta, Georgia, to gather all papers and documents pertaining to Resolute Insurance Company. Evidently, the four powers of attorney and qualifying power of attorney were acquired by the son, John Wilson, without the knowledge of Resolute. The son was never an agent for Resolute, nor was he ever a licensed bondsman in Georgia or in Mississippi. [Emphasis added]
* * * * * *
It is evident from the testimony in this case that John S. Wilson, Jr., was not the agent of Resolute Insurance Company at the time he signed the bonds and filed the power of attorney ...
290 So.2d at 601.
In the instant case, Barbara Merrill never filed a certificate of authority for Independent Fire and therefore was not a licensed agent. The policy forms in her office had been in the possession of the previous owners who were licensed agents. Independent Fire also sent a representative to gather the policy forms which could not be found. Accordingly, the lack of an agency relationship between Merrill and Independent Fire is obvious.
Nunley contends there remains a material issue of fact as to whether Merrill had apparent authority. The Resolute Court dealt with the issue of apparent authority simply by stating: "A good deal of authority has been cited on the law of agency in this case as to the apparent authority of any agent, none of which is applicable since no agent or agency is involved herein." 290 So.2d at 603. Since there is no agency relationship between Merrill and Independent Fire, this Court also need not consider Merrill's apparent authority.
Nunley next charges that Independent Fire should be estopped from denying that they issued the policy since they obtained a benefit from the issuance of the policy. This Court likewise dealt with this issue in the Resolute case, where we stated:
We must bear in mind that the record in this case shows conclusively that the insurance company had no knowledge that the son of their deceased agent had obtained possession of the various powers *586 of attorney furnished his father by the insurance company.
Nunley attempts to show Independent Fire had knowledge of the facts by pointing to the "special notice" sent by Independent Fire to Nunley in January of 1985. It should be noted that when this notice was sent, Independent Fire had denied any liability and affidavits had been filed stating Independent Fire had no knowledge of the policy issuance. Based on the affidavits of Vice President Smith that Independent Fire received no premium for the policy, we find that the lower court justifiably relied on the explanation of Independent Fire concerning the special notice. There is nothing in this record to suggest this "special notice" was anything more than Independent Fire deposed it was. Merrill obviously knew she had no contract with Independent Fire, or she would not have been scurrying about on April 2 attempting to secure coverage with Vanguard.
Based on the documentary evidence, affidavits, and depositions submitted by Independent Fire, we conclude that no material issue of fact existed since it was undisputed that Merrill was never an agent of Independent Fire when she purportedly issued the policy.

B.

VANGUARD
Nunley thought he had a fire insurance policy with Independent Fire. Merrill knew that he did not. Nunley made no request of Merrill to secure other insurance.
Ordinarily, a policy of insurance issued after a loss is not a valid policy. Asher v. Old Colony Insurance Co., 240 Miss. 166, 126 So.2d 255 (1961); Scottish Union National Insurance Co. v. Warren-Gee Lumber Co., 118 Miss. 740, 80 So. 9 (1918).
This Court has held, however, that where at the time of an application for insurance there has been a loss but neither the applicant nor the insurer knew of this fact a recovery may be had on a policy subsequently issued, which was antedated so as to include the time at which the loss occurred. State Farm Mut. Auto. Ins. Co. v. Calhoun, 236 Miss. 851, 112 So.2d 366 (1959). Yet, such a rule presupposes there was a contract, a meeting of the minds of the parties.
There was no meeting of the minds of the parties in this case. Nunley made no application for insurance on April 2, 1984. The Indiana Supreme Court faced a similar case to this in Celina Mutual Casualty Co. v. Baldridge, 213 Ind. 198, 10 N.E.2d 904 (1937). On July 19, 1930, Baldridge thought he had insurance on his car with a company called American States Insurance Company (which later cancelled the policy for nonpayment of premium, although he had paid the local agent). After his car was damaged, the local agent, a Mrs. Brishaber, informed Baldridge that she had insured him on July 19 with Celina Mutual Casualty Company. The Indiana Supreme Court had this to say:
[I]t is sufficient that on July 19th, when Mrs. Brishaber says she undertook to cancel his policy and procure him a new one in the appellant company, she had no authority to act for him, and he had no knowledge of her action, ...
To create a contract of insurance there must be an agreement between the insurer and the insured. There must be a meeting of the minds... . There was no contract made on July 19th, because appellee had not authorized or requested the issuance of insurance, and had no knowledge that a contract with appellant was contemplated... .
"An agent of an insurance company has no authority to insure property already destroyed; and a policy written and intended as a substitute for a subsisting policy in another company, but not delivered, and of which the assured has no knowledge until after the property is destroyed by fire is not a valid contract of insurance." [Citations omitted]
A direction authorizing an insurance agent to procure a policy of insurance is exhausted by the procuring of one policy, *587 and confers no authority to afterwards cancel and procure other or different policies. [Citations omitted]
In Clark v. Insurance Co. of North America (1896) 89 Me. 26, 34, 36, 35 A. 1008, 1011, 35 L.R.A. 276, it is said:
"The contract of insurance is to be tested by the principles applicable to the making of contracts in general. The terms of the contract must have been agreed upon. This necessarily implies the action of two minds, of two contracting parties. If it is incomplete in any material particular, or the assent of either party is wanting, it is of no binding force. * * *
"In this case, the action of the agent in the transaction relative to the attempted change of risk to the defendant company was entirely ex parte. If we assume that he was acting with authority from the company, it was then no more than a proposition which had not been made known to the plaintiff. To give it validity required his knowledge and his consent. At the time of the loss, knowledge had not been conveyed to him, and his acceptance had not been given. The rights and liabilities of the parties are to be determined by their legal status at the time of the loss. It is inconceivable that the defendant company can be held liable for indemnity against loss when no contract for indemnity existed at the time the loss occurred."
* * * * * *
It seems clear that there never was a contract between the appellant and the appellee, or ever a thought of such a contract, except in the mind of the local agent, until after the property to be insured was destroyed. There can be no contract without knowledge of the contracting parties... .
10 N.E.2d at 906-907. See also Alliance Ins. Co. v. Continental Gin Co., 285 S.W. 257 (1926).
We do not have the question before us of whether Merrill has any rights against Vanguard. Also, Nunley's cause of action against Merrill remains unaffected by this decision, the circuit court having rendered a Rule 54(b) final judgment only as to Independent Fire and Vanguard. Rule 54(b) Mississippi Rules of Civil Procedure.
We do hold no insurance contract of any kind was ever entered into as between Nunley and Vanguard.
The judgment of the circuit court is accordingly affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON, and GRIFFIN, JJ., concur.