CARLTON, J.,
for the Court:
¶ 1. King Metal Buildings Inc. (King) appeals the Winston County Circuit Court’s grant of a motion for summary judgment filed by Fidelity & Deposit Company of Maryland (F & D),[1] Renasant Insurance Inc. (Renasant),[2] and Miles Roland Byrd (Byrd)[3] (collectively Defendants). On appeal, King submits the following issues: (1) whether the Defendants provided King with a valid bid bond; and (2) whether the circuit court properly granted summary judgment.
¶ 2. The circuit court found the bid bond in this case valid. However, upon review, this Court finds that the record and applicable law reflects that the circuit court improperly granted summary judgment because questions of material fact exist as to whether the Defendants acted *569 negligently and, if só, whether they breached a duty owed to King in providing the surety bid bond herein. Therefore, we reverse and remand the case to the Winston County Circuit Court for further proceedings consistent with this opinion.
FACTS
¶3. This case arises from an action originally filed by King on May 28, 2010, in the Winston County Chancery Court against the Defendants. The action consisted of claims based on breach of contract, negligent misrepresentation, and negligence in regard to an allegedly invalid bid bond issued to King by the Defendants to comply with the Mississippi Department of Transportation (MDOT) bid requirements.
¶ 4. King submitted a bid to MDOT for four projects that involved the construction of open equipment sheds in several Mississippi counties. As part of the bid package for the projects, MDOT required a bid bond, which King purportedly secured, from the Defendants. The bid bond reflects on its face that the surety bond was executed and issued to King on January 26, 2010, the day of the MDOT bid opening, and that the bond was immediately effective.
¶ 5. The plain language of the bid bond stated that King, as principal, and F & D, as surety,⅜ were held and firmly bound to MDOT, as obligee, in the amount of five percent of the amount of the bid submitted. Byrd signed the surety bid bond as attorney-in-fact for F & D, but to constitute a valid bid bond, MDOT bid-prequalification requirements and Mississippi statutory law also required the agent to possess a valid agent certificate of authority issued by the Mississippi Insurance Commissioner (Commissioner).[4]
¶ 6. MDOT unsealed bids for the contracts from seven contractors on January 26, 2010. With a proposal of $772,050, King asserts that its bid constituted the lowest and best bid. However, upon inspection of King’s bid package, MDOT rejected King’s bid. MDOT had determined that the bid bond was defective because Byrd failed to constitute a qualified agent in Mississippi for F & D, in accordance with the prequalification requirements in Mississippi Code Annotated section 65-1-85(l)(e) (Supp.2007), due to his lack of a valid Mississippi agent certificate, as reflected in Sircon, the Mississippi Insurance Department’s database of • insurance agents.
¶7. The record shows that, due to a' failure to pay the continuous agent certificate-renewal fees, the Commissioner had previously revoked Byrd’s certificate of au-« thority to conduct insurance business in Mississippi as F & D’s agent. Due to such revocation, Byrd lacked proper registration, lacked the filing of a current notice of agency appointment, and lacked a valid agent certificate of authority to conduct business for F & D in Mississippi at the time the surety bid bond was issued. Hence, Mississippi statutes prohibited Byrd from conducting insurance business for F & D until his agent certificate was restored. Therefore, Byrd’s lack of a Mississippi statutorily required valid agent certificate to conduct business for F & D meant that the bid bond entered into between Byrd and King was null and void. See Miss.Code Ann. § 83-1-29 (Rev. 1999); *570 Miss.Code Ann. § 83-17-25 (Rev. 1999); Ground Control, LLC v. Capsco Indus., 120 So.3d 365, 369-71 (¶ 12), 369 n. 2 (Miss.2013).
¶ 8. As stated, MDOT determined that the defective bid bond rendered King’s bid conditional, and due to MDOT regulations and the statutory requirements of Mississippi Code Annotated section 65-1-85 (Supp.2007), MDOT concluded that conditional bids were irregular and prohibited. The record reflects that Roy Tipton (Tipton) served as a special assistant attorney general and chief counsel for the Mississippi Transportation Commission (MTC), and Tipton’s deposition testimony sheds light on MDOT’s bid procedures and bidding process. Tipton testified that MDOT relies on the Sircon database to ensure that a valid bid bond exists at the time the bid is opened. Tipton further stated that if a person “is not on the Sircon database, then [he is] not authorized. [He] may be authorized by the insurance company or the surety, but [he has] not registered with the ... [Commissioner. And so we do not have an ironclad bond at that point.”[5] Tipton explained that the agent certificate of authority was required for Byrd to be qualified to sign the bid bond in Mississippi to bind F & D, a foreign insurer, to the terms set forth in the bid bond.[6]
¶ 9. After the bid opening on January 26, 2010, further inspection of Byrd’s insurance license and agent certificate for F & D revealed why Byrd lacked a current agent certificate for F & D and why he was not listed as an active agent in Sircon. Byrd’s continuous agent certificate of authority had previously expired on May 31, 2009, for failure to pay the applicable renewal fees to the Mississippi Insurance Department.[7] As discussed throughout this opinion, Byrd’s deficiency stemmed from his revoked agent certificate of authority and not from the lack of an underlying agency agreement between him and the principal, F & D, which the Defendants established in a 2004 power of attorney from F & D to Byrd.[8]
¶ 10. The testimony of Scott Stoltzner (Stoltzner), an agent and employee of F & D’s parent company, sheds light on Byrd’s relationship with F & D. Stoltzner testified to F & D’s conveyance of a power of attorney to Byrd and other Renasant agents in 2004.[9] Stoltzner also addressed *571 the issue of how Byrd’s agent certificate expired and was then revoked. Prior to the 2004 power of attorney, F & D obtained an agent appointment for Byrd around June 1, 2000, by filing the notice of appointment with the Commissioner and paying the related fees required for Byrd’s continuous agent certificate. In 2009, however, F & D and Byrd failed to properly renew Byrd’s agent certificate of authority to transact insurance business in Mississippi for F & D, which was necessary for the certificate to remain continuously in effect. As a result of this lapse, Byrd’s appointment and related agent certificate of authority to do business for F & D in Mississippi expired.
¶ 11. During his deposition, Stoltzner acknowledged that F & D, care of its parent company, received a letter from the Mississippi Insurance Department dated June 9, 2009, informing F & D of the expiration of Byrd’s license, revocation of Byrd’s Mississippi agency appointment, and revocation of Byrd’s agent certificate with the company effective on May 31, 2009. In response to deposition questions, Stoltzner also acknowledged that F & D and Byrd failed to reinstate all Byrd’s agency appointments in June 2009, which were necessary to continue or to restore Byrd’s F & D agent certificate of authority in Mississippi.[10] Stoltzner’s testimony reflects that, as he understood the situation, F & D and Byrd failed to pay Byrd’s renewal fee, and Mississippi automatically cancelled all Byrd’s agency appointments to act as an agent of F & D. The testimony and the statutes reflect that the Commissioner issues both the license and the agent certificates of authority to do business for foreign insurers.[11] See Miss.Code Ann. § 83-17-5 (Rev. 1999).
¶ 12. During the two-week period between the bid opening and the protest hearing, Mississippi Insurance Department Director of Licensing Robert Perkins (Perkins) issued a letter on behalf of the Mississippi Insurance Department on February 4, 2010, providing that Byrd held a valid insurance “license” from June 1, 2000, to May 31, 2009, and then from June 10, 2009, to the present time. The letter *572 from Perkins further reflected that Byrd’s licensing record indicated that Byrd had been “appointed” as an agent in Mississippi for F & D from June 1, 2000, to May 31, 2009, and then appointed again by F & D as agent in Mississippi from January 28, 2010, to the present. The record shows that Perkins’s letter documented a gap in Byrd’s agent certifícate and, thus, his authority to transact insurance business for F & D in Mississippi from June 1, 2009, until January 28, 2010, two days after the bid opening. At the bid-protest hearing, Perkins asserted that the Mississippi Insurance Department deemed Byrd to be legally appointed to issue the bid bond after the date of the bond’s actual issuance. Perkins reached this conclusion by applying the fifteen-day grace period in Mississippi Code Annotated section 83-17-75(2) (Supp.2009).[12] Thus, Perkins’s reasoning allowed the surety bid bond to be retroactively effective to the date of January 13, 2010.
¶ 13. Also during the two-week period between the bid opening and the protest hearing, F & D paid the necessary fees and executed the necessary documents and appointments with the Commissioner on January 28, 2010, to restore Byrd’s agent certificate in Mississippi for F & D. In reliance upon Perkins’s testimony, F & D argued at the protest hearing, and now argues on appeal, that the fifteen-day grace period provided by section 83-17-75(2) allowed Byrd’s agent certificate to be effective and valid retroactively to January 13, 2010, a date prior to the issuance of the restored agent certificate. The record shows, however, that the Commissioner restored Byrd’s agent certificate of authority on January 28, 2010, two days after the bid opening and after Byrd executed and issued the surety bid bond as a purported certified agent of F & D in Mississippi.
¶ 14. MDOT still rejected King’s bid as irregular and awarded the contract to another bidder.[13] King then filed suit against the Defendants on May 28, 2010, in Winston County Chancery Court, seeking damages sustained as a result of losing the MDOT bid. By agreement of all the parties, the case was transferred to the Winston County Circuit Court. On July 19, 2012, F & D filed a motion for summary judgment. Shortly thereafter, Renasant and Byrd also filed a motion for summary judgment, arguing allegations that mirrored those raised by F & D. On November 8, 2010, the circuit court entered an order granting summary judgment in favor of the Defendants, concluding that no genuine issues of material fact existed.
¶ 15. In granting summary judgment, the circuit court determined that, since the deficiencies in Byrd’s Mississippi agent certificate of authority were cured two days after the bid opening on January 28, 2010, then the fifteen-day grace period of section 83-17-75(2) allowed Byrd’s Mississippi agent certificate of authority to be retroactively effective to the previous date of January 13, 2010. Based upon this reasoning, the circuit court found the bid bond to be valid on the bid date of January 26, 2010, since this date fell within the fifteen-day grace period. Upon finding the deficiencies cured and the bid not conditional, the circuit court further found that MDOT had exercised its discretion in rejecting King’s bid and awarding the contract to another bidder. The circuit *573 court’s grant of summary judgment in favor of the Defendants constitutes the basis of the appeal before this Court.
¶ 16. Upon review, we find that the grace period of section 88-17-75(2), which the circuit court relied upon in its decision, fails to apply to immediately enforceable surety-bond contracts.[14] Byrd lacked a statutorily required current agent certificate of authority to transact insurance business in Mississippi for F & D, a foreign insurer, when he executed and issued the surety bid bond on January 26, 2010. Therefore, questions of material fact exist as to whether the Defendants acted negligently in issuing the bid bond to King and, if so, whether the Defendants’ negligence breached a duty owed to King. See Turner v. Trustmark Nat’l Bank, 105 So.3d 1123, 1124 (¶ 3) (Miss.Ct.App.2012) (discussing the standard of review for summary-judgment cases).
STANDARD OF REVIEW
¶ 17. “The standard of review in considering a circuit court’s grant or denial of summary judgment is de novo.” Turner, 105 So.3d at 1124 (¶ 3). When this Court considers whether the circuit court committed an error in granting summary judgment, “we must examine all the evidentia-ry matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits in the light most favorable to the nonmovant.” Id. (citation and internal quotation marks omitted). “The movant carries the burden of demonstrating that no genuine issue of material fact exists, and the nonmovant is given the benefit of the doubt as to the existence of an issue of material fact.” Id.
¶ 18. In addition, we acknowledge that when applying and construing statutes, where an apparent conflict arises between a specific statute and a statute that addresses the matter generally, then principles of statutory construction dictate that the specific statute controls over the general statute. Benoit v. United Cos. Mortg. of Miss., 504 So.2d 196, 198 (Miss. 1987). We further acknowledge that we apply the plain language and plain meaning of statutes. City of Natchez, Miss. v. Sullivan, 612 So.2d 1087, 1089 (Miss.1992).
¶ 19. “The burden of proving an agency relationship rests squarely upon the party asserting it[.]” Highlands Ins. Co. v. McLaughlin, 387 So.2d 118, 120 (Miss.1980). We also acknowledge that “the general laws of agency apply to agency relationships in the insurance industry.” McPherson v. McLendon, 221 So.2d 75, 78 (Miss.1969).
¶20. To have a valid contract, there must be a meeting of the minds of the parties. Nunley v. Merrill, 513 So.2d 582, 586 (Miss.1987). Regarding insurance contracts, the Mississippi Supreme Court has recognized the following:
The contract of insurance is to be tested by the principles applicable to the making of contracts in general. The terms of the contract must have been agreed *574 upon. This necessarily implies the action of two minds, of two contracting parties. If it is incomplete in any material particular, or the assent of either party is wanting, it is of no binding force.... The rights and liabilities of the parties are to be determined by their legal status at the time of the loss.
Id. at 587 (quoting Clark v. Ins. Co. of N. Am., 89 Me. 26, 35 A. 1008, 1011 (1896)).
DISCUSSION
¶ 21. As acknowledged, a question of material fact exists as to whether the Defendants acted negligently in providing the surety bid bond herein and, if so, as to whether any such negligence breached a duty owed to King. This case involves various terms used and defined by Mississippi insurance statutes. However, the result of this case a}so addresses the specific issues of the validity of a surety bid bond for an MDOT project; the continued validity, under Mississippi insurance statutes, of an agent’s certificate of authority to transact insurance business in Mississippi for a foreign insurer; and the validity of a surety bid bond issued in Mississippi by an insurance agent with a revoked agent certificate. In this case, by operation of statutory law, the failure to pay the required renewal fees on May 31, 2009, resulted in revocation of Byrd’s Mississippi agency appointment for F & D and his certificate of authority to transact insurance business in Mississippi for F & D.[15] The record reflects that notice of the revocation was sent by the Commissioner and received by the Defendants.
¶ 22. Applicable insurance statutes define the term of art “appointed agent” as set forth in Mississippi Code Annotated section 83-17-75(1) (Supp.2009), which provides that an insurance producer shall not act as an agent of an insurer in Mississippi until he becomes the insurer’s “appointed agent.” Becoming an “appointed agent” requires a written appointment, which is evidenced by the insurer’s filing of a notice of agency appointment with the Commissioner. Miss.Code Ann. § 83-17-75 (Supp.2009). Mississippi statutes require foreign insurers to file notice of an agency appointment with the Commissioner before the foreign insurer can receive an agent certificate of authority for its appointed agent to transact insurance business in Mississippi. Id.; Miss.Code Ann. § 83-21-1(d) (Rev. 1999).
¶ 23. As explained by Tipton in his deposition, the underlying purpose of this statutory requirement is to protect the public.[16] A foreign insurer’s failure to so appoint a Mississippi resident as agent and obtain from the Commissioner the issuance of an agent certificate of authority for that agent to transact insurance business in Mississippi precludes a finding that the agent constitutes a qualified agent with the statutory authority to solicit business on behalf of the foreign insurer in Mississippi. Miss.Code Ann. § 83-17-75; Miss.Code Ann. § 83-17-l(b) (Supp.2009). Additionally, an agent certificate remains continuously valid if the annual certificate fee is paid. Miss.Code Ann. § 83-17-5. Significant to the decision in this case, Mississippi statutory law provides that a “nonactive *575 agent” lacks a current, continuous agent certificate of authority to do business for a foreign insurer and clearly cannot solicit new business in Mississippi. Miss.Code Ann. § 83 — 17—1(b). Clearly, statutory law prohibited Byrd from issuing the bid bond herein to King on F & D’s behalf while he lacked a statutorily required valid and current agent certificate.
¶ 24. In the present case, the Defendants attempt to apply the grace period applicable to initial agency appointments set forth in section 83 — 17—75(2).[17] The grace period set forth in section 83-17-75(2) fails to apply to the surety bid bond in this case since, by the bond’s own terms, the surety bond constituted an immediately enforceable and binding contract upon issuance.[18] The agency contract between the principal and the insurance agent is distinct and separate from the statutorily required agent certificate issued by the Commissioner, which authorizes the agent to conduct business in Mississippi.[19]
¶25. As explained by Tipton’s deposition testimony, Mississippi statutory law requires a surety bid bond for MDOT to be binding on the date of the bid, and MDOT bids were required to meet prequa-lification requirements. Tipton explained at the protest hearing that this policy protects the public and protects the integrity of the bidding process by holding bidders accountable to their bids “as is” when the bids are submitted to MDOT. Again, according to its terms, the surety bid bond in this case constituted an immediately effective and enforceable contract, rather than an application of insurance. In accordance with Mississippi statutory law, Byrd, as a nonactive agent for F & D in Mississippi, lacked the statutory authority to transact insurance business for F & D in Mississippi at the time he executed the bond on behalf of F & D because the Commissioner had previously revoked his agent certificate of authority.[20] The record further shows that F & D received notice of the revocation of Byrd’s agent certificate in June 2009.
¶ 26. With respect to notice of the revocation, Exhibit “C” in the record, submitted with King’s brief opposing F & D’s motion for summary judgment, shows that the Commissioner published the following letter to F & D, care of its parent company, on June 9, 2009, upon the failure to renew Byrd’s certificate of authority in Mississippi:
The Appointments listed below are appointments or terminations that have been processed for the insurer listed. The appointments are continuous, unless terminated by the insurer or agent, as long as the insurer pays an annual certificate fee. The insurer must notify the agent within thirty (30) days if the appointment is non-renewed or canceled. If this information is in error, you must contact the Mississippi Insurance Department within 30 days of the date of this letter.... Failure to contact this *576 Department will certify acceptance of the transaction and the responsibilities thereupon.
This notice provided to F & D, care of its parent company, reflected that Byrd’s appointment had been revoked. As discussed, Stoltzner, testifying on behalf of F & D, acknowledged that F & D received notice that the Mississippi Insurance Department terminated Byrd’s appointments on May 31, 2009, for failure to renew.[21]
¶ 27. The circuit court erroneously reasoned that the correction of Byrd’s revoked agent certificate of authority to conduct insurance business in Mississippi for F & D at a date after the bid-opening date retroactively rendered the surety bid bond effective and valid and that, due to such correction, the bid was not conditional. As discussed, however, an agent’s certificate of authority to transact insurance business in Mississippi on behalf of a foreign insurer must be evidenced by a current notice of agency appointment on file with the Commissioner. See Miss.Code Ann. § 83-21-1 (Rev. 1999). In the present case, the Defendants failed to satisfy this statutory requirement, which is necessary for an agent to possess statutory authority to conduct insurance business in Mississippi for a foreign insurer.
¶ 28. As echoed by Tipton in his deposition testimony, statutes that require agent certificates of authority to transact insurance business and that require the filing of the notice of agency appointments seek to protect the public. See generally 3 Couch on Insurance § 44:39 n. 6, at 60 (3d ed. 2011). Section 83-1-29 clearly provides that, upon revocation of a certificate of authority to an insurance company or its agents, no new business shall be conducted in Mississippi by the company or its agents while default continues and until the Commissioner restores the certificate of authority to do business. The Mississippi Supreme Court has held that entering into a contract in violation of Mississippi statutory law renders the contract null and unenforceable. See Ground Control LLC, 120 So.3d at 369-71 (¶ 12), 369 n. 2. Tip-ton’s deposition testimony on behalf of MDOT reflects the importance of determining a bid bond’s responsiveness at the time of the bid opening. As Tipton explained, waiting until after the bid opening to determine the responsiveness could provide “the low bidder a way out of a bid [while remaining protected], ... [a]nd that’s not what the law is designed to do.”
¶ 29. As acknowledged, a review of the surety bid bond’s language in this case shows that the terms of the bond required it to be immediately effective upon execution and issuance. See One S., Inc. v. Hollowell, 963 So.2d 1156, 1164 (¶ 18) (Miss.2007) (stating that the parties’ guaranty agreement was a contract, and as such, it was required to be interpreted according to the four corners of the document unless it was’ ambiguous). Due to Byrd’s lack of a statutorily required current agent certificate for F & D, he lacked authority under Mississippi statutory law to conduct insurance business in Mississippi for F & D when he executed and issued the bond. Therefore, the bid bond was null and void.[22]
*577 ¶ 30. F & D asserts, as an alternative argument, that Byrd’s Mississippi agency was continuously effective, even -when his Mississippi agent certificate from the Commissioner had expired, because of a preexisting power of attorney. However, this argument commingles the authority conveyed by the 2004 power of attorney between Byrd, the agent, and F & D, his principal, with the Mississippi statutory requirement that Byrd possess a current agent certificate from the Commissioner to conduct insurance business in Mississippi for F & D, a foreign insurer. F & D argues that Byrd’s appointment became effective after payment of Byrd’s delinquent fees, filing a new agency appointment with the Commissioner, and obtaining a new or restored certificate of authority.[23] An application of this logic would require the agent certificate to be retroactively effective to the bid-opening date. However, both the bid-prequalification requirements and the terms of the bid bond required the bid bond to be immediately effective on the bid-opening date. F & D’s argument also fails to address section 88-1-29’s prohibition against a foreign insurer conducting business in Mississippi when the Commissioner revoked the agent’s certificate of authority for that foreign insurer.[24]
¶ 31. Moreover, the argument fails to address the policy, embraced in jurisprudence, of discouraging agreements entered into illegally, including those prohibited by statute. See Ground Control LLC, 120 So.3d at 375-76 (¶ 33) (Randolph, P.J., concurring in part and dissenting in part). Stoltzner’s deposition testimony reflects that Byrd apparently possessed a power of attorney from F & D since 2004 to act on its behalf as its agent and attorney-in-fact. However, Byrd lacked a current Mississippi agent certificate of authority to conduct insurance business for F & D. Thus, Byrd possessed no authority from the Commissioner to transact insurance business on behalf of F & D in Mississippi on the date that he executed and issued the bond to King, which was also the date the bids were opened. As acknowledged, contracts entered into in violation of Mississippi statutory law are null and unenforceable. See Ground Control LLC, 120 So.3d at 369-71 (¶ 12), 369 n. 2.
¶ 32. The various and specific statutes applicable to continuous agent certificates, including Mississippi Code Annotated sections 83-5-73 (Rev. 1999), 83-17-5, and 83-17-75(3)-(6) (Supp.2009), require fees to be paid for the initial appointment of an agent, and also for annual renewals thereof, to allow the authorization to continue. F & D and Byrd failed to pay these required renewal fees for Byrd’s continuous agency certification, resulting in revocation of Byrd’s agent certificate of authority to transact insurance business in Mississippi for F & D.[25] As provided by Mississippi Code Annotated section 83-17-37(1) (Supp. *578 2009), the revocation occurs automatically on the mandated renewal date for failure to pay renewal fees unless already suspended or revoked by the Commissioner.[26] Similarly, section 83-17-5 provides that an agent’s certificate, showing authority from the Commissioner to do business in Mississippi as agent of a particular foreign insurer, remains valid if the annual certificate-renewal fee is paid to continue the authorization.[27] The record reflects that Byrd’s agent certificate of authority to transact business for F & D automatically expired or terminated upon failure to renew. Since Byrd lacked a valid agent certificate on the date he issued the surety bid bond, then King’s bid failed to comply with the MDOT bid requirements when the bids were opened. See Miss.Code Ann. § 65-1-85.
¶ 33. Under its own terms, the surety bid bond herein constituted an immediately enforceable contract.[28] Stated otherwise, King contracted for a surety bid bond that would be immediately enforceable on the date of the bid opening. The terms of the bid bond reflect that its effective date occurred on the date of the bid opening, January 26, 2010, which was also the date the bond was executed and issued to King.[29] The Defendants’ argument presupposes that they possessed the authority to unilaterally and retroactively change or amend the terms of the surety-bid-bond contract with King and MDOT, the obli-gee, by subsequently obtaining coverage that complied with Mississippi statutory contract-bid requirements after the date of performance, as opposed to the effective date specified in the bid bond.
¶ 34. The Legislature certainly possesses the authority to prescribe regulations governing licensure requirements and the *579 privilege of conducting business in a state.[30] In exercising that authority, the Mississippi Legislature, in section 83-17-5, limited the continued validity of a Mississippi agent certificate of authority where no certificate fee is paid to continue the authorization. Also, section 83-1-29 allows the Commissioner to revoke an appointment and certificate of authority for failure to comply with the applicable law. On its face, section 83-1-29 clearly prohibits new business from being conducted in Mississippi until the certificate of authority is restored. See also Miss.Code Ann. § 83-17-25. Contracts entered into in violation of statutory law are ineffective, null, and void, and Byrd’s power of attorney from F & D fails to substitute for compliance with the statutory requirements necessary to conduct insurance business in Mississippi. See Ground Control LLC, 120 So.3d at 369-71 (¶ 12), 369 n. 2.
¶ 35. King relies on Mississippi Attorney General Opinion, 2010-00312, 2010 WL 2795647, Minor (June 11, 2010), to support its argument. The Minor attorney general opinion concluded the following:
[W]hen determining the responsiveness of a bid, the mandatory requirements of [s]ection 65-1-85 ..., the MTC rules and regulations, and the documents contained in the specifications of a specific project, control over statutory provisions [such as section 83-17-75 or other similar statutes] authorizing grace periods for insurers and agents to register with the Insurance Commissioner.
We acknowledge the reasoning of the advisory Minor attorney general opinion. See Shelter Mut. Ins. Co. v. Dale, 914 So.2d 698, 703 (¶ 20) (Miss.2005) (citations omitted).
¶ 36. Section 65-l-85(l)(e) provides in pertinent part:
Each bid for such a construction and reconstruction contract must be accompanied by a cashier’s check, a certified check or bidders bond executed by a surety company authorized to do business in the State of Mississippi, in the principal amount of not less than five percent (5%) of the bid, guaranteeing that the bidder will give bond and enter into a contract for the faithful performance of the contract according to plans and specifications on file.
(Emphasis added).
¶ 37. Section 65-l-85(3)-(4) further provides the MDOT director and MTC with the right to reject any and all bids and establishes that a bidder’s failure to comply with prequalification requirements may be the basis for the rejection of a bid.[31] The Minor attorney general opinion emphasized that MDOT must determine a bid’s responsiveness on the basis of the bid contents at the time the bid is opened and must reject bids noncompliant with the requirements at that time. The Minor attorney general opinion recognized the statutory purpose of protecting the integrity of the bidding process. The Minor attorney general opinion explained that if an irregular bid bond could later be *580 “cured” by using the fifteen-day grace period set forth in section 83-17-75, as urged by Perkins at the protest hearing, then irregular bidders could withdraw a bid without fear of penalty after the bid opening by simply allowing the grace period to expire. The Minor attorney general opinion stated that such a result would be contrary to the legislative intent of section 65-1-85 since the delay in re-advertising the bid would disrupt the project timeline and would be a disservice to taxpayers. The Minor attorney general opinion clearly acknowledged the purpose of protecting the public underlying the statutory requirements of a written notice of appointment, the filing of such notice, and the issuance of agency certificates.[32]
¶ 38. Section 65-1-85 specifically , states that construction bids must include a bid bond executed by a surety company authorized to do business in Mississippi, and in this particular case, MDOT also mandated as a prequalification requirement that each bidder’s package include a valid bid bond. We find that the bid bond herein failed to meet the statutory requirements of a valid bid bond because Byrd lacked a current agent certificate to act as an appointed and certified agent to conduct insurance business for F & D in Mississippi. The bidder’s bond failed to comply with the statutory requirements of a valid agent certificate issued upon payment of renewal fees. Thus, the bond was unenforceable. See Ground Control LLC, 120 So.3d at 369-71 (¶ 12), 369 n. 2. Accordingly, pursuant to section 65-1-85(3)-(4), MDOT possessed the right to reject the bid as nonresponsive since it failed to comply with the MDOT bid-prequalification requirements.[33]
¶ 39. The circuit court erroneously reasoned that since King requested a protest hearing, held two weeks after the bid opening, then MDOT did not reject King’s bid' on the bid-opening date. As previously acknowledged, the circuit court also erroneously reasoned that the initially nonconforming bid subsequently became retroactively valid when F & D later paid the required renewal fees, subsequently submitted the necessary notice of agency appointment, and subsequently obtained the needed agent certificate for Byrd to conduct business for F & D in Mississippi. See All Seasons Constr., Inc. v. United States, 55 Fed.Cl. 175, 180 (Fed.Cl.2003) (citing Interstate Rock Prods., Inc. v. United States, 50 Fed.Cl. 349, 358 (Fed.Cl.2001)) (stating that the determination of an acceptable bid is based on the bid documents themselves as they appear at the bid opening). The record shows that MDOT rejected King’s bid on the bid-opening date due to noncompliance with the bid requirements and the bid’s status as a nonresponsive, conditional bid. MDOT’s position did not change merely because King requested a protest hearing.
CONCLUSION
¶ 40. In its grant of summary judgment, the circuit court concluded that *581 no question of material fact existed as to whether the Defendants committed acts of negligence rendering them liable to King. As discussed herein, a review of the record and applicable law shows that Byrd’s Mississippi appointment and Mississippi agent certificate of authority to conduct insurance business in Mississippi as an agent for F & D, the foreign insurer, expired on May 31, 2009, due to revocation for nonpayment of his renewal fee. The record also shows that the agent certificate was not restored until two days after issuance of the bid bond.[34] Therefore, a question of material fact exists as to whether the Defendants acted negligently in providing the surety bid bond in this case and, if so, whether that negligence breached a duty owed by them to King, causing King to suffer damages.
¶ 41. Based upon the foregoing, we find that the circuit court erred in finding as a matter of law that the Defendants provided King with a valid bid bond and, since questions of material fact exist as to whether the Defendants acted negligently in providing King the surety bid bond, the circuit court erred in granting summary judgment in favor of the Defendants. We therefore reverse the circuit court’s judgment and remand this case to the circuit court for further proceedings consistent with this opinion.
¶ 42. THE JUDGMENT OF THE WINSTON COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ„ CONCUR. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.

.F & D is a foreign insurer, which is any insurance company organized under the laws of another state or government. See Miss. Code Ann. § 83-17-5 (Rev. 1999) (stating that an agent certificate shows the company for which an agent is licensed to do business in Mississippi and that the agent is duly authorized to do business for that company; the certificate remains valid only as long as the annual renewal fee is paid); Miss.Code Ann. § 83-17-37(1) (Supp.2009) (providing that each license issued to a producer expires on the mandated renewal date unless prior thereto the Commissioner revokes or suspends it); Miss.Code Ann. § 83-17-75(2) (Supp.2009) (requiring that the insurer file a notice of agency appointment).

. Renasant is a domestic insurer licensed in Mississippi to transact insurance business.

. Byrd is an employee of Renasant.

. Mississippi Code Annotated section 65-1-85(l)(e) (Supp.2007) requires that each bid “be accompanied by a cashier’s check, a certified check or bidders bond executed by a surety company authorized to do business” in Mississippi, and in this case, MDOT also required that each bidder’s package include a valid bid bond as a prequalification requirement.

. See generally 3 Couch on Insurance § 44:39 n. 6, at 60 (3d ed. 2011) (providing case law that cites the public’s protection as an objective of state statutory requirements that a notice of appointment be filed with the insurance department).

. Surety bonds guarantee performance and future performance. See generally W. Cas. & Sur. Co. v. Stribling Bros. Mach. Co., 244 Miss. 12, 22-25, 139 So.2d 838, 840-42 (1962) (discussing a surety's contractual obligations to third parties in a suit on a contractor's performance bond).

. See Miss.Code Ann. § 83-17-5; Miss.Code Ann. § 83-37-21 (Rev. 1999) (providing for the payment of a privilege tax to maintain a continuous agent certificate).

. The briefs intermingle the terms "power of attorney" and "agent certifícate of authority.” The agent certificate of authority is a distinct document from a power of attorney. Whereas an agent certificate of authority is required to transact insurance business in Mississippi, a power of attorney allows a principal to convey to an agent the authority to act on its behalf in identified matters. See Matthews v. Fid. & Guar. Ins. Underwriters Inc., 734 F.Supp. 755, 758 (S.D.Miss. 1990); Kountouris v. Varvaris, 476 So.2d 599, 603-04 (Miss.1985).

. Stoltzner testified pursuant to Mississippi Rule of Civil Procedure 30(b)(6). While the record contains Stoltzner’s deposition testimony attesting to the existence of the 2004 power of attorney, the power of attorney itself was not included.

. Stoltzner further acknowledged in his deposition testimony that a difference exists among a licensure, an agency appointment in a particular state, and a power of attorney. He explained that a person must simply pass an exam and pay a fee to conduct business as an independent insurance agent in Mississippi. However, becoming an appointee of a particular foreign insurance company requires a request to the Commissioner to issue a certificate of authority for the agent to transact business in Mississippi as an agent for that foreign company. A statutory distinction also exists between the procedures to secure an initial agent appointment and the renewal of a continuous certificate of authority, since a statute specifically addresses renewal. See Miss.Code Ann. § 83-15-3 (Rev. 1999) (discussing the Commissioner’s authority to annually licensé insurance companies and to issue agent certificates); Miss.Code Ann. § 83-17-5.

. The briefs intermingle the term "certified individual” with the term "power of attorney” when actually referencing the statutorily required notice of agency appointment the insurer must file with the Commissioner to be issued a certificate of authority for an agent to transact insurance business in Mississippi for a foreign insurance company. See Miss.Code Ann. § 83-1-23 (Rev. 1999) (providing for the Commissioner’s examination of a foreign insurance company before granting a certificate of authority); Miss.Code Ann. § 83-1-29 (providing that, upon revocation of the certificate of authority, no new business is to be transacted by an agent while in default); Miss.Code Ann. § 83-5-83 (Rev. 1999) (failing or refusing to comply with Mississippi insurance laws will result in revocation of an insurance company’s license to transact business in the state); Miss.Code Ann. § 83-21-1 (Rev. 1999) (discussing the requirements for an insurer to become authorized to conduct business in Mississippi).

. The record contains Perkins’s audio testimony at the protest hearing, which rested upon his own statutory interpretation of Mississippi Code Annotated section 83-17-75 (Supp.2009).

. After MDOT initially rejected King's bid, MDOT never withdrew its decision to reject the bid even though Eng exercised its right to protest.

. See United States ex rel. Wilhelm v. Chain, 300 U.S. 31, 34, 57 S.Ct. 394, 81 L.Ed. 487 (1937) ("We are of [the] opinion that the bond was not a mere offer but was given upon a present and sufficient consideration, and therefore became a binding contract when it was delivered to and approved by the bankruptcy court."); Davis v. Wells, 104 U.S. 159, 166,-S.Ct.-, 26 L.Ed. 686 (1881) (“If the guaranty is made at the request of the guarantee, it then becomes the answer of the guarantor to a proposal made to him, and its delivery to or for the use of the guarantee completes the communication between them and constitutes a contract.”); see generally Carrols Equities Corp. v. Villnave, 57 A.D.2d 1044, 395 N.Y.S.2d 800, 803 (1977) (stating that “a surety bond attaches to the principal contract and must be construed in conjunction with it”).

. See generally Wofford v. Safeway Ins. Co. of Ala., 624 So.2d 555, 559 (Ala.1993) (finding that a broker was not an “agent” under Alabama law because he was not actually appointed by the insurer to transact business on its behalf); West v. Metropolitan Life Ins. Co., 144 Kan. 144, 61 P.2d 918, 921 (1936) (noting that an insurance agent is an individual "authorized in writing by any insurance company lawfully qualified to transact the business of insurance, to negotiate or effect contracts of insurance”).

. See generally 3 Couch on Insurance § 44:39 n. 6, at 60.

.Section 83-17-5 nonetheless acknowledges that an agency certificate "shall remain valid as long as the [insurer] pays ... the [Cjommissioner an annual certificate fee to continue the authorization.” See also Miss. Code Ann. § 83-5-71 (Rev. 1999) (providing that the duration of a license "shall continue for the next ensuing twelve (12) months after June 1 of each year unless sooner revoked or suspended by the commissioner”); Miss.Code Ann. § 83-17-37(1).

. See Wilhelm, 300 U.S. at 34, 57 S.Ct. 394; Davis, 104 U.S. at 166, - S.Ct. -; see generally Carrols Equities Corp., 395 N.Y.S.2d at 803.

. See Miss.Code Ann. § 83 — 17—1(b); Miss.Code Ann. § 83-17-5.

. See Miss.Code Ann. § 83-1-29; Miss.Code Ann. § 83-17-1(b).

. Stoltzner testified in his deposition that the licensing department of F & D’s parent company receives notices of cancelled appointments. Stoltzner never personally received the Commissioner’s letter, but he acknowledged that the letter was addressed to the parent company’s licensing department. He further agreed that, based on the letter, the Commissioner had notified F & D in June 2009 of Byrd’s lapsed appointment.

. See Wilhelm, 300 U.S. at 34, 57 S.Ct. 394; Davis, 104 U.S. at 166, — S.Ct. -; see generally Wofford, 624 So.2d at 559; West, 61 P.2d at 921; State v. Lane, 60 N.D. 703, 236 N.W. 353, 355-56 (1931) (citing U.S. Fid. & *577 Guar. Co. v. Riefler, 239 U.S. 17, 25, 36 S.Ct. 12, 60 L.Ed. 121 (1915)) (finding that a contract of sureties on a warehouseman’s bond was complete when the bond was delivered into the hands of the obligee).

.But see Northlake Dev. LLC v. BankPlus, 60 So.3d 792, 796-97 (¶¶ 13, 15) (Miss.2011) (holding that an agent’s unauthorized acts had no legal effect on the principal, and the deed of trust on the property used to secure a bank loan was void rather than voidable unless and until later ratified by the principal).

. As defined by Mississippi statutory law, the term "agent” refers to one who has actual written authority to act or, in other words, has actually been appointed in writing by the insurer to transact business on its behalf. See Miss.Code Ann. § 83-17-75; see also Wofford, 624 So.2d at 559; West, 61 P.2d at 921.

. The failure to pay the required renewal fees when due resulted in revocation of the agent certificate but had no impact on the related 2004 power of attorney.

. See Miss.Code Ann. § 83-5-71.

. See also Miss.Code Ann. § 83-17-37(2) (Supp.2009) (discussing renewal of an insurance producer's license); but cf. Miss.Code Ann. § 83-1-29 (stating that upon revocation of the certificate of authority no new business may be conducted in Mississippi while default continues). Byrd’s authorization expired by operation of law due to nonpayment of his renewal fees in accordance with the applicable statutes. The continuous agent certificate authorized in section 83-15-3 requires payment of fees. Section 83-17-5 establishes authority for the Commissioner to issue continuous agent certificates and to annually license insurers, but the section also clearly requires payment of an annual certificate fee to continue the authorization. Section 83-17-5 provides that every agent of an insurer authorized to do business in Mississippi shall be required to obtain from the Commissioner a certificate bearing the seal of the Commissioner's office and showing the company for which that agent is licensed to do business in Mississippi and that he is an agent of said company and duly authorized to do business for that company. Section 83-17-5 further provides that such certifícate shall remain valid as long as the insurance company pays to the Commissioner an annual certificate fee to continue the authorization.

. See Wilhelm, 300 U.S. at 34, 57 S.Ct. 394; Davis, 104 U.S. at 166, - S.Ct. -; see generally Carrols Equities Corp., 395 N.Y.S.2d at 803.

. Contract principles generally require new consideration to amend the terms of an existing contract. See Fryar v. Sav-Amil, LLC, No. 3:08CV63-SA-SAA, 2009 WL 4841041, at *3 (N.D.Miss.2009); Iuka Guar. Bank v. Beard, 658 So.2d 1367, 1372 (Miss.1995). A direction authorizing an insurance agent to procure a policy of insurance is exhausted by the procuring of one policy and confers no authority to afterwards cancel and procure other or different policies. See Krebs ex rel. Krebs v. Strange, 419 So.2d 178, 181-82 (Miss.1982) (recognizing that offer and acceptance are required for an enforceable insurance contract, and a subsequent modification constitutes a new agreement that must be supported by consideration) (citation omitted); see generally 7 Couch on Insurance §§ 102:7, :13, at 21-23, 50-51 (backdating and postdating insurance coverage).

. See Lloyds of Tex. v. Bobbitt, 40 S.W.2d 897, 901-02 (Tex.Civ.App.1931) (recognizing that the business of insurance is subject to state regulation and control); 44 C.J.S. Insurance § 140, at 168-71 (2007) (discussing generally legislative authority to revoke or suspend an agent’s insurance license); 3 Couch on Insurance § 47:18, at 35-43 (providing the statutory grounds for the revocation or suspension of an agent's license).

. See All Seasons Constr., Inc. v. United States, 55 Fed.Cl. 175, 180 (Fed.Cl.2003) (finding it reasonable for the contracting officer to conclude that the photocopied power of attorney failed to definitely establish at the time of the bid opening that the bond was enforceable against the surety).

. See generally Lloyds of Tex., 40 S.W.2d at 901-02 (recognizing the following: the legislature possesses authority to prescribe regulations or to withdraw the privilege of conducting insurance business in a state; an insurance license is not a contract and does not operate to vest rights or to create a permanent right; and the legislature can impose burdens on business licenses or revoke authority).

. See Wofford, 624 So.2d at 559 (finding that in insurance business an agent refers to one who was actually appointed by the insurer to transact business on its behalf); see also Northlake Dev. LLC v. BankPlus, 60 So.3d 792, 796 (¶ 13) (Miss.2011) (recognizing that a principal may ratify, and thus become bound by, an agent’s unauthorized acts).

. See Miss.Code Ann. § 83-17-37 (Supp. 2009) (discussing expiration and renewal of an insurance producer's license).